## LELAND v. BOURNE.

No. 2330. Decided June 3, 1912 (125 Pac. 652).

1. BOUNDARIES—EVIDENCE—PRESUMPTION—FIELD NOTES OF SECOND SURVEY. The presumption that corners have been established at the places indicated by the field notes relates to the field notes of the controlling survey, and has no application where the question is what was the corner of a lot as established by an original survey, and the field notes in evidence are those of a second survey by another surveyor; but the only presumption as to such field notes is that what is recited in them is *prima facie* correct. (Page 131.)

2. BOUNDARIES—EVIDENCE—PRESUMPTION—FIELD NOTES OF SECOND SURVEY. From the fact that the field notes of a second survey recite that certain monuments were found, one at the intersection of certain streets, and another at a certain corner of a certain lot, a statement by the surveyor making such notes that the monuments are the originals, or that they were placed by an official surveyor, or that they are precisely where they were placed by the original surveyor, cannot be assumed. (Page 132.)

3. BOUNDARIES—EVIDENCE—PRESUMPTION—FIELD NOTES OF SECOND SURVEY. Even if from the recital of the field notes of a second survey, that certain monuments were found, one at the intersection of certain streets, and one at a certain corner of a certain lot, an inference may be deduced that the monuments were placed there by some one in authority, and that the field notes of the original survey if found would show that the monuments were where they were placed, the inference is weaker than is the presumption founded on field notes of the original survey, and so requires less to overcome it. (Page 133.)

4. APPEAL AND ERROR—REVIEW—QUESTION OF FACT OR LAW. Where findings are based merely on a presumption of fact, and the presumption is entirely dissipated, they are unsupported by evidence, and the question becomes one of law.[1] (Page 134.)

5. BOUNDARIES—EVIDENCE—PRESUMPTION—FIELD NOTES OF SECOND SURVEY. Any presumption as to the original location of a boundary, arising from the recital of the field notes of a second survey as to certain monuments being found, *held* entirely dissipated by the other facts and circumstances in evidence. (Page 134.)

---

[1] State v. Brown, 36 Utah, 46, 102 Pac. 641, 24 L. R. A. (N. S.) 545.

6. APPEAL AND ERROR—REVIEW—EVIDENCE—EQUITY CASE. A suit
to quiet title being an equity case, the judgment of the Su-
preme Court on the whole evidence may be invoked, and the
findings being, in its judgment, clearly against the weight of
evidence, it will vacate them and substitute others.   (Page 137.)

APPEAL from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Davis M. Leland against Anna O. Bourne.

Judgment for plaintiff.   Defendant appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*Evans & Evans* for appellant.

*C. S. Patterson* for respondent.

FRICK, C. J.

Respondent brought this action to quiet the title to a strip
of ground about four feet in width by three rods in length
extending along the rear end of his lot which is 4½ by three
rods, and which strip he alleges is a part therof.   Both re-
spondent and appellant purchased from a common source,
and owned a part of lot 2 in block 79, plat D, Salt Lake City,
as hereinafter shown.   Lot 2 is a piece of ground ten by ten
rods, constituting the southwest quarter of block 79, plat
D, Salt Lake City, and was orignally owned by one person.
In November, 1899, the original owner sold three by ten
rods off the east side, and in April, 1901, sold 4½ by ten
rods off the west side of lot 2, which left a 2½ by ten rod
strip between the two parcels sold as aforesaid.   The latter
strip the owner sold and conveyed to appellant in December,
1901.   Afterwards, in 1906, the respondent became the
owner of the west 4½ by ten rods, but he apparently disposed
of all of it except the 4½ by three rods in the northwest
corner of said lot 2, and it is a strip about four feet by three
rods on the rear of said 4½ by three rods that is in dispute.

The following plat will help to explain the evidence here-inafter referred to:

LOT 2, BLOCK 79, PLAT D, SALT LAKE CITY

The strip marked "X, X," is the strip in controversy. "M" represents the monument in the intersection of H Street and Fifth Avenue, and is the initial point from which all the surveys of lot 2 herein referred to were made. "L, L," represents the west line as the same is claimed to be by appellant, while "C" indicates the southwest corner of lot 2, and the broken or dotted line running parallel with "L, L," indicates the west lot line of said lot as is claimed by respondent. The dots on the line marked "P, P," indicate the stumps of old fence posts which mark the line of an old fence erected many years ago, and which were supposed to be on the west boundary line of lot 2. "S, S," represents a permanent cement or concrete walk laid by the city within the last few years, and the shaded portion running north and south along the west margin of respondent's property and marked "W" indicates a permanent concrete retaining wall that respondent erected within the last three or four years, and is about four feet west of the lot line as claimed by him. The fence or the posts that remain in the ground, marked

"P, P." are about four feet west of the lot line as claimed by respondent.

At the trial respondent introduced in evidence the field notes of a survey of lot 4 in block 79, or in the northeast corner of said block, which was made in September, 1890, at the request of one Thomas Marioneaux. Said field notes were introduced in evidence as a part of the records of the city engineer's office of Salt Lake City. Who made the survey or the field notes is not disclosed, but it is shown that they were made by a person connected with the city engineer's office. In making the survey aforesaid the monument marked "M" was found at the intersection of H Street and Fifth Avenue. There was also found a monument on the southwest corner of lot 2 at the point marked "C" on the plat which was 39.37 feet north and 43.46 feet east from the monument "M." Similar monuments to that found on the southwest corner were also found on the other three corners of block 79. There were also two other surveys made in said block at the request of private parties, one of which was made in lot 2. The field notes of both of those surveys were also introduced in evidence, and in making the said surveys the monument "M" and the corner monument marked "C" were used as initial points. It is not disclosed by the evidence who made the latter surveys or field notes, and they were received in evidence as the preceding ones as a part of the records of the city engineer's office. Respondent also proved that there was a resurvey of some city blocks adjoining block 79, and that block 62, immediately south of block 79, was shifted three feet west, but in making said shift the monuments found as aforesaid were not changed in any way. It was also made to appear, and the fact is admitted in the pleadings, that there was an original survey and plat made of that portion of Salt Lake City in which block 79 and the surrounding blocks are located, and that no field notes of such a survey or any record thereof is in existence so far as any one knows.

Appellant, as a part of his case, produced evidence showing that about thirty-five years prior to the trial a post fence had

been erected along the west boundary of lot 2 aforesaid, which fence stood on the line marked "L, L;" that portions of the fence posts still remain in the ground indicating where the fence was located; that a permanent cement or concrete sidewalk has been laid by the city west of the line marked "L, L," which sidewalk is indicated by the letters "S, S," on the plat; that respondent has erected a permanent cement or concrete retaining wall marked "W" on the plat which is on the line marked "L, L;" that more than twenty-five years preceding the trial a fence had also been erected on the east line of lot 2, a part of which still exists, and which is precisely in the center of block 79 in case the west boundary line is established on the line "L, L," and that said fence is directly in line with the center of the blocks lying to the north and south of block 79, and that, if the line claimed by respondent prevails, this fence is about four feet west of the center of the block; that the west line of lot 2, as indicated by the line "L, L," corresponds with the west line of the blocks north and south thereof, while, if the line claimed by appellant is taken as the true boundary line, the west margin of block 79 will be about four feet east of the west line of the other blocks north and south. It is also made to appear that, if the line contended for by respondent is to govern, then there is a strip of ground nearly six feet in width between the east margin of the permanent sidewalk as laid by the city and the west margin of lot 2, and that respondent has encroached on the street with his retaining wall about four feet. It is also shown that the distance between the line marked "L, L," and the east line of lot 2 as marked on the plat is just ten rods, or 165 feet, and that, if the block is considered as a whole, the distance between the line as claimed by respondent and the east boundary line of the block is 330 feet or twenty rods; that there is a surplus of four feet somewhere, either in the block or in the street or in both. It would appear that, if the boundary line contended for by respondent is taken, the surplus is in H Street, and, if the line marked "L, L," controls, then the surplus must be in the east half of the block.

41 Utah—9

The county surveyor also made a survey of lot 2, and he found the monument "M" as indicated in the field notes introduced in evidence, and also found the monument "C" at the southwest corner of lot 2. There were thus four surveys made which with slight differences, agree with respect to the distance that the southwest corner of lot 2 is located from the monument "M" found in the intersection of the streets aforesaid. The county surveyor insists that the lines fixed by the original survey must have been located about four feet west of where the same are located by the three other surveys to which we have referred, and the field notes of which were given in evidence as heretofore stated. He, however, has no evidence to support his theory, except the fact that the resurvey ordered by the authorities of Salt Lake City almost universally differs from the original survey. In this case counsel for respondent, however, insist that the two surveys coincide. There is no proof of this latter claim either except as indicated by what is said herein. The county surveyor also testified that, if the line contended for by respondent prevails, then all the lines running north and south through lot 2 must be shifted about four feet to the east in order to give each claimant his proportionate share of lot 2 as purchased, while, if the line "L, L," prevails, then all the lines in said lot 2 are correctly indicated on the ground by fences or otherwise, and each claimant, including the respondent, will obtain his correct proportion without changing anything. Upon substantially the foregoing evidence, the court made findings of fact in which he found the true west boundary line of lot 2 to be on the dotted or broken line and in conformity therewith found as a conclusion of law that respondent was the owner of the strip of ground in controversy marked "X, X," and entered a decree quieting the title thereto in him. Appellant prosecutes this appeal to reverse said decree.

We remark that there is no question in this case of an agreed boundary line, and that the evidence is entirely without conflict except where conflicting inferences may be deduced from the conceded or undisputed facts. The appellant

asserts that the findings are not supported by the evidence. Is the court's finding that the true west boundary line of lot 2 is as indicated by the broken or dotted line on the plat commencing at the point "C" sustained by any substantial evidence? There certainly is no direct evidence from any source that the line as found by the court is the original boundary line marked by the original survey of block 79. Neither are there any field notes from which such a result may directly be deduced or found. Counsel for respondent relies entirely upon a presumption which in the case of *Greer v. Squire,* 9 Wash. 359, 37 Pac. 545, in the headnote to that case is stated thus:

"The presumption is that corners have been established at the places indicated by the field notes, and the burden of proving otherwise is on him who disputes their correctness."

See, also, *Cadeau v. Elliott,* 7 Wash. 205, 34 Pac. 916. The foregoing statement is sound in law as it is sound in common sense. All the authorities are to the same effect, and it is not necessary to refer to them here. It seems the district court also based its finding on the foregoing presumption. The important question in the case, therefore, is whether the foregoing presumption is applicable, and hence controls this case.

As we have seen, in this case the monuments relied on were not placed as "indicated by the field notes" introduced in evidence, but the field notes produced in evidence were made many years after the original survey was made, and after the monuments found had been placed by some one whose field notes indicating where they were placed were lost or destroyed. The field notes introduced in evidence therefore do not represent the character of field notes that are spoken of in the cases where the presumption relied on by respondent's counsel is given as the law. The field notes there spoken of constituted, so to speak, the original entries of the surveyor made by him or under his direction at the time of the survey, and as evidence indicating where the monuments placed by him may be found and for the purposes

of identification the field notes gave the descriptions of the monuments. Such field notes, therefore, are the direct evidence of what the officers who made them did, and how and where the monuments placed by him may be found. The field notes introduced in evidence in this case were not made by the surveyor who made the original survey, which is the survey that must control in this case, or by any officer having knowledge of the facts, but they merely show what was found by the surveyor making a subsequent or secondary survey. The latter field notes are, therefore, not original notes, nor are they even a copy or duplicate of the original notes. What is meant by original notes here is the notes of the original or first survey. The only presumption in favor of the field notes introduced in evidence therefore is that what is recited in them is *prima facie* correct, and the burden to show the contrary is on him who disputes their correctness.

Nor can it be assumed that in the latter field notes the surveyor who made them assumed to state that the monuments found by him are the originals, or that they are precisely where they were placed by the original surveyor who placed them. Indeed, the surveyor making the latter field notes does not even certify, nor can he, that the monuments found by him were placed by an official surveyor, unless there is some evidence connected with the monuments showing that fact. The most that can be claimed is a presumption or inference that they were placed in making an official survey which may have been the original survey. If the presumption contended for by counsel and relied on by the court is to prevail, then it must not only be presumed that what the last surveyor recites in his field notes is correct, but one must go a step back, and also presume that what the last surveyor found is precisely as it was placed by the original surveyor, and that the person placing the same was a person in authority. This, in one sense at least, is heaping one presumption upon another, and this falls far short of constituting the presumption spoken of by the authorities referred to . That such is the fact is, we think, easily demonstrated. As we have pointed out, respondent introduced in

evidence the field notes of three separate and distinct surveys in which the monuments marked "C" and "M" were found, and in which their relative positions and distance from each other were found to be nearly the same. That is, there is found to be a slight difference in the distance that "C" is from "M" in the field notes of the different surveys. While this difference is small, yet it illustrates the very point we desire to make. The presumption referred to in the books is based upon the fact that officers usually perform their duty, and in doing so, if they are required to make a record of their acts, that such record speaks the truth, and can be relied on until its correctness is overturned. But this is all. If, therefore, there are two or more resurveys or secondary surveys so called of the same parcel or piece of ground in which the same initial starting point is used and such surveys differ in any essential, which one will be presumed to correctly indicate the original survey? In such event the presumption that each surveyor speaks the truth in his field notes and that they are to be relied on still prevails, but there is no presumption that either one or the other correctly locates the original monuments except as such may be inferred from other facts and circumstances. When there is a difference, therefore, in giving either course or distance in two or more surveys, there certainly can be no presumption that both are correct, nor that one is correct and the other is wrong. The presumption relied on by counsel, therefore, cannot apply with its full force in case of resurveys or secondary surveys.

But let us assume that, in view that it is recited in the field notes introduced in evidence, certain monuments were found both at the intersection of the streets and at the southwest corner of lot 2, from that fact an inference may be deduced that the monuments were placed there by some one in authority, and that the original field notes, if found, would show that the monuments were where they were placed. Surely such an inference, or, call it a presumption if you will, is one which may be disputed; that is, disproved. Even the original field notes can be shown

to be incorrect and the presumption of their correctness overcome. The question, therefore, is, Does it require the same *quantum* and character of evidence to overthrow the inference or presumption if it be so called arising from the production of the field notes of a secondary or resurvey as it would to overthrow the presumption respecting the correctness of the original field notes? It would seem that but one answer is possible, and that is that the inference or presumption that the monuments were originally placed where they were found in making a secondary survey, and that some one in authority placed them where found must be much weaker when such inference is deduced from the field notes of a secondary survey than if the presumption were based upon field notes of the original survey. If the secondary field notes be considered as evidence, their probative force must necessarily be much weaker than would be that of the original field notes, and, as we think, nothing can be deduced from the former except the mere inference more or less strong but not rising to a presumption of fact. No other conclusion is logical or permissible.

The real question to be decided, therefore, is, Were the inferences arising from the secondary field notes introduced in evidence entirely dissipated or disproved by the other facts and circumstances in the case? Further, Is it made to appear from such facts and circumstances that the boundary line as claimed by respondent is not as located by the original survey? What are those facts and circumstances? (1) That the respondent improved his own property long after all of the secondary surveys were made in conformity to the lot line as claimed by appellant by extending a permanent concrete or cement retaining wall along the entire width of his property. If the lot line is where he now says it is, this wall is four feet in the street. He thus recognized the boundary line as claimed by appellant when he made the permanent improvement aforesaid. (2) The city laid a permanent concrete sidewalk along the entire west side of lot 2 and of block 79. If the boundary line is where respondent says it is, the sidewalk is nearly six feet distant

from the west margin of respondent's property, and is at least four feet farther west than naturally it should be. The city officials, then, also recognized the line "L, L" as being the west boundary line of lot 2. (3) If respondent's boundary line prevails, then the west line of lot 2 is about four feet east of the west boundary lines of the blocks to the north and to the south of it, and, in case the north half of block 79 should remain as it is, there would be a jog of about four feet in the west boundary line of said block 79. (4) If the boundary line prevails as contended for by appellant, all of the owners of property in lot 2 would have precisely what they bought and paid for and all the improvements will be as they were intended by the owners, but, if respondent prevails, he will either have four feet in excess of what he bought, or the four feet will be in the street which would make the street four feet wider along block 79, or lot 2, as the case may be, than it is anywhere else. (5) If the broken or dotted line is taken as the true boundary line, then for more than thirty-five years all of those who either owned or improved property in lot 2 by building fences or making other improvements were mistaken in locating the boundary line, notwithstanding that the lines located by them correspond with similar lines in the blocks both north and south of block 79. (6) If the line contended for by appellant prevails, then there can be no other or further litigation with regard to lot or division lines because, so far as appears from all of the evidence, all the parties with their fences and improvements agree with the boundary lines aforesaid, but, if respondent's line is adopted, then all lines, except where the statute of limitations can be made to apply, must be shifted, and thus disarrange to some extent buildings and improvements.

The probative force to be given to fences and other improvements placed on boundary lines many years prior to a resurvey or secondary survey is well stated by Judge Cooley in the case of *Diehl v. Zanger,* 39 Mich. 601, and also by the Supreme Court of Wisconsin in *City of Racine v. Emerson,* 85 Wis. 80, 55 N. W. 177, 39 Am. St. Rep. 819. The

same doctrine is approved by this court in *Moyer v. Langton,* 37 Utah, 9, 106 Pac. 508. It may be contended, however, that in the foregoing cases the original monuments had disappeared, while in the case at bar such is not true. But this is precisely what is assumed by both court and counsel. It is contended that because in a secondary survey monuments are found that no one knows when or by whom placed, such monuments must be assumed to be the original ones, and that they were originally placed where found, although they are found to be contrary to all the other visible landmarks and old improvements found on the surface of the ground. If there were no other landmarks which are contrary to such monuments, or any such other marks were made by those who had no interest in the soil on which they are found, or if it were made to appear that when made they were not intended to mark a boundary line, the case would be different. Here, however, the monuments found and relied on are all in direct conflict with the established improvements indicating the boundaries and which latter are in harmony with all other landmarks found upon independent ground such as are found on the blocks north and south of the block in question. It is but reasonable, therefore, that the latter should control the former.

Counsel for respondent has to some extent endeavored to meet the claim that litigation will result by insisting that nothing is in issue now except the small strip marked "X, X." In this counsel is clearly mistaken. The real question is, Where is the west boundary line of lot 2 located? When that is found, what follows is merely incidental. If this boundary line as located by the district court prevails as between appellant and respondent, it can and probably will also be claimed to be as fixed by said court by other property owners in said block 79 as well as by the owners of property in lot 2, and hence considerable needless litigation may ensue. Of course, it goes without saying that the mere fact that litigation may ensue is no reason why a person should be deprived of any of his property or that boundary lines should not be declared to be as established, yet it may be urged as

a good reason why courts should consider carefully whether there is any evidence authorizing a change in the existing condition of things by declaring that the boundary lines are not where they for a generation or more have appeared to be, but that they were established at some other point. When findings of the trial court are based merely upon a presumption of fact, as in this case, and the presumption is entirely dissipated, then there is no evidence in support of the findings, and hence, as held in *State v. Brown,* 36 Utah, 46, 102 Pac. 641, 24 L. R. A. (N. S.) 545, the question is merely one of law.

We are of the opinion that in this case the presumption arising from the secondary field notes that the west boundary line of lot 2 was originally located along the dotted or broken line is entirely dissipated by the other facts and circumstances in the case, and hence the findings are entirely unsupported by the evidence. This being so, the conclusions of law and decree are erroneous, and cannot be sustained.

Assuming, however, that we are in error in assuming that respondent's whole case rests upon a presumption and that such presumption has been entirely dissipated, yet he cannot prevail. This is an equity case to quiet the title to real property. In such a case both parties have a right to invoke our judgment upon the whole evidence. If in such a case in our judgment the findings are clearly against the weight of the evidence, it is our duty to vacate them and substitute others. In this case in our judgment the findings are manifestly against the great weight of the evidence, and for that reason cannot be permitted to stand. In cases of this kind, no hard and fast rule can be laid down with respect to whether the boundaries as indicated by the old fences and landmarks or those as claimed by a secondary survey shall prevail. Each case must be determined upon its own facts and circumstances, and the trier of fact from a consideration of all of them must determine the weight to be given to the evidence. We think in this case the court erred in assuming that the same presumptions must be indulged in favor of a secondary survey and the field notes thereof as

the law requires to be given to the original when in fact a mere inference more or less strong exists in favor of the field notes of a secondary survey as has been explained.

In conclusion, we remark that the strip claimed by respondent is a few inches in excess of four feet; but, while this is true, the evidence is not conclusive that the difference between the boundary line as claimed by the parties is not also a few inches in excess of four feet. It seems reasonably clear that, if the west boundary line of lot 2 is located as contended for by appellant, respondent has all the ground called for in his deed, and hence has no claim upon any ground east of appellant's west boundary line, and that appellant obtains no more than the precise amount called for by her deed. All that it is necessary to do, therefore, is to remand the case, with directions. The findings of fact, conclusions of law, and decree are therefore vacated, set aside, and reversed. The case is remanded to the district court, with directions to enter findings of fact and make conclusions of law in accordance with the views herein expressed, and enter a decree establishing the west boundary line of lot 2 on the line marked "L, L," and also establishing the east boundary line of respondent's 4½ by three rods coterminous with the west line of appellant's 2½ by ten rods, 4½ rods east of the line marked "L, L," and as the same is indicated on the ground by the existing fence, and to enter a decree quieting the title to the strip "X, X" in appellant as prayed for in her answer, and make such disposition of the costs as to the court may seem just and equitable. Appellant to recover costs on appeal.

McCARTY, J., concurs.

STRAUP, J. (concurring).

Let me add to this that the respondent and his predecessors in interest treated and acquiesced in the old fence line "L, L" as the west line of the block and the west line of respondent's parcel of land. That among other things is evident by his construction of the permanent concrete retaining wall on a

line with the old fence line "L, L." He ought not now to be permitted to assert that the west lot line and the west line of his land is four feet to the east of his wall, and that the east line of his land is correspondingly four feet to the east, and thereby disturb the boundary lines and permanent improvements of about every occupant of the block.