[No. 25850. Department Two. December 16, 1935.]

JAMES P. HAWK, *Appellant,* v. JOHN R. WALTHEW, *Respondent.*[1]

*R. F. Dotsch,* for appellant.

*Burgunder & Walthew,* for respondent.

[1]Reported in 52 P. (2d) 1258.

674

MAIN, J.—This action was brought to quiet title to certain real estate. The defendant denied the claim of the plaintiff and sought to have the title to the disputed real estate quieted in himself. The trial was to the court without a jury, and resulted in findings of fact from which it was concluded that the plaintiff should take nothing and that the defendant was entitled to a judgment quieting the title to the property. Judgment was entered in accordance with the findings and conclusions, from which the plaintiff appealed.

The appellant, in the year 1897, acquired title to lot 3 in section 26, in a certain township in Thurston county. Lewis S. Barnard, in 1900, acquired title to the northeast quarter of the southeast quarter and lot 4, all in the same section. The respondent acquired title from Barnard in 1917. The northeast quarter of the southeast quarter is to the east of lot 3. Lot 4 is to the south of the other two tracts. On the west, lot 3 and lot 4 border on Long Lake.

In 1902, a wire fence was erected, starting near the northeast corner of lot 3 and extending south. When those building the fence reached the southeast corner of lot 3, the question of whether they would turn and go west to the lake along the south line of lot 3 or to go straight on through lot 4 to the lake arose, and it was finally concluded that, inasmuch as there was no pasture land in the portion of lot 4 which would be to the left of the fence extended straight down to the lake, and the further fact that the fence could be built straight ahead with less work and less expense, it was thus built. The wire fence between lot 3 and the northeast quarter of the southeast quarter varied from seven feet to twenty feet to the north of the true line.

The appellant claims to have acquired title to the strip and also the tract on the west end of lot 4 by adverse possession. He says that, when the fence was

built, it was intended to be the true dividing line between the properties. The respondent says that the purpose of the erection of the fence was to regulate pasturage.

This property, or a part of it, at the time was timber land, which, in 1905, was logged off. One witness referred to it as wild land. The only use to which it was put was that of pasturage, there being no cultivated tracts. The trial court found:

"That said fence was not erected nor intended by the parties thereto to be a line fence nor as determining the boundary between said contiguous tracts, but was erected as a matter of convenience for the purpose of regulating the pasturage of livestock."

After considering all the evidence, as it appears in the record, we are of the view that the trial court's finding was correct. The evidence not only fails to sustain the burden of proof which was on the appellant, but the preponderance of the evidence is the other way. The fence not having been erected as a line fence, nor as determining the boundary between the tracts of land, the use by the appellant would be permissive until such time as he did something which would indicate "an open and notorious hostile intent, which is always necessary in order to establish title by prescription." *Lappenbusch v. Florkow,* 175 Wash. 23, 26 P. (2d) 388.

There is a presumption that one entering upon the property of another does so in subordination to the title of the real owner, and this is a valuable property right. *Peoples Savings Bank v. Bufford,* 90 Wash. 204, 155 Pac. 1068; *Schmitz v. Klee,* 103 Wash. 9, 173 Pac. 1026.

This case is very much like that of *Lappenbusch v. Florkow,* 175 Wash. 23, 26 P. (2d) 388, *supra.* There, a fence, which was not upon the true dividing line, had

been erected more than thirty years prior to the time that the dispute arose. It was wooded land, as here, and, in that case, it was held that no title had been acquired by adverse possession. There is in this case, which there was not in that, direct testimony of the witness who helped erect the fence as to what the purpose of it was, and he testified that it was to regulate the pasturage. At no time during all the years that elapsed subsequent to the erection of the fence until May 9, 1933, when the appellant made a conveyance of a small portion of the tract off of the west end of lot 4 to a third party, was any hostile act committed by him which would start the running of the statute of limitations.

The fence not having been erected as a line fence, nor as determining the boundary, as already indicated, the appellant's possession was permissive, and no hostile act which would make the possession adverse occurring until the giving of the deed mentioned, the trial court correctly disposed of the case.

The judgment will be affirmed.

MILLARD, C. J., BEALS, BLAKE, and HOLCOMB, JJ., concur.