[No. 29345. Department One. December 8, 1944.]

BOWDEN-GAZZAM COMPANY, *Appellant*, v. EARL KENT *et al.,*
*Respondents,* FANNIE D. MCREAVY *et al., Defendants.*[1]

[1]Reported in 154 P. (2d) 292.

*Preston, Thorgrimson, Turner, Horowitz & Stephan* and *Theodore S. Turner,* for appellant.

*Charles W. Johnson* and *J. W. Graham,* for respondents.

JEFFERS, J.—This action, which is a companion case to *Bowden-Gazzam Co. v. Hogan, ante* p. 27, was originally commenced by Bowden-Gazzam Company against Earl Kent and wife, in December, 1941. Subsequently, on January 5, 1943, an amended complaint was filed, wherein, in addition to Earl Kent and wife, many others were made defendants, among them Helen McReavy Andersen, state of Washington, and Mason county.

The action was instituted for the purpose of quieting plaintiff's title to all second-class tidelands in front of government lot 4, section 32, township 22 north, range 3 west W. M., Mason county, Washington, lying east of the east line of Seattle street extended north, as *such street* is designated on the plat of Hood's Canal Land & Improvement Company's plan of Union City, according to the recorded plat thereof in the office of the auditor of Mason county, volume 1 of plats, page 9, and to have defendants ejected therefrom.

Plaintiff asked for certain relief against the state of Washington relative to the right of way of the Navy Yard highway.

It also asked that Mason county be restrained from doubly taxing any portion of such tidelands, and from taxing same as platted property; that all taxes levied against

such tidelands as platted property be held null and void; and that all tax deeds issued pursuant to such taxes be adjudged null and void.

While the state of Washington and Mason county appeared in this action, any and all rights claimed by them in and to the tidelands here involved were settled by the decree, and no appeal has been taken from that part of the judgment. The only other defendants appearing in the action were Earl Kent and wife and Helen McReavy Andersen.

Defendant Helen McReavy Andersen appeared in the action and, in addition to certain admissions and demands, alleged affirmatively that in March, 1889, a plat or plan of Union City was filed in the office of the auditor of Mason county by Hood's Canal Land & Improvement Company; that there appears on this plat a certain block 47, which block includes the land claimed by plaintiff. It is further alleged that defendant and her predecessors in interest have for more than twenty years claimed ownership of lots — to —, in block 47 (the lots claimed or shown by the evidence are 1 to 13, inclusive, 14, 15, 16, 17, 39, and 40, block 47); that defendant, through her predecessors in interest, has been in open, notorious possession of such *platted lots,* and has paid taxes and made improvements thereon.

Earl Kent and wife appeared and answered the complaint. They alleged as a first affirmative defense that they were the owners in fee simple of lots 18 to 25, inclusive, block 47, Hood's Canal Land & Improvement Company's addition to Union City; that they have been in open, notorious possession of lots 20 to 23, inclusive, personally, for more than ten years, and through their grantors for a period in excess of ten years as to lots 18, 19, 24, and 25. Defendants also alleged that they have been in open, notorious, and adverse possession of the above-described premises and second-class tidelands for more than seven years, having a connected title deducible from the United States.

As a second affirmative defense, defendants alleged that, under date of March 1, 1941, they acquired by tax deed from Mason county title to blocks 46, 57, 58, and 67, Hood's Canal Land & Improvement Company's addition to Union City.

Plaintiff replied to each of the above answers, admitting the filing of Hood's Canal Land & Improvement Company's plat of Union City, but denying that such plat covers any part of the second-class tidelands claimed by plaintiff; denying that any of the deeds by which defendants claim title were intended to or did convey any interest in and to the tidelands here involved; and denying that the tax deed set up in Kent's answer was intended to or did convey any right, title, or interest in and to the second-class tidelands in front of government lots 3 or 4, section 32, township 22 north, range 3 west W. M.

Upon the issues thus formed, the cause came on for hearing before the court on June 29, 1943, together with the *Hogan* case hereinbefore referred to. The court made and entered a separate decree in each case, and we are here concerned with the decree entered in the case now under consideration.

We think it will be helpful, in following our discussion of the respective claims of the Kents and Helen McReavy Andersen, the only defendants concerned in this appeal, if the decree be set out in some detail. We are also of the opinion that the decree settles some questions raised by these defendants, they not having cross-appealed but to the contrary having asked that the judgment of the trial court be affirmed. While the decree deals with second-class tidelands in front of government lot 3 as well as government lot 4, we are concerned in this appeal only with the second-class tidelands in front of government lot 4, and particularly those second-class tidelands in front of certain lots in block 47.

The decree determined the ownership of all second-class tidelands in front of government lot 4 and east of the east line of Seattle street to be in plaintiff, except such as were awarded to Kent and wife, Helen McReavy Andersen, and the state of Washington. It determined that Hood's Canal

Land & Improvement Company's plat of Union City was void, in so far as it purported to cover tidelands below the line of ordinary high tide. It determined that Mason county had no right to tax as platted property the second-class tidelands here involved.

By the decree the court specifically adjudged that the portion of the plat of Union City which embraced the north half of block 47 (lots 1 to 13, inclusive), and that portion of lots 14 to 40, both inclusive, lying east of the east line of Seattle street and north of the line of ordinary high tide, was void. The decree also provided that, from and after the entry of the decree, lots 14 to 40, inclusive, block 47, should consist of only those portions of such lots which lie south of the line of ordinary high tide, as shown on exhibit M.

Exhibit M was prepared by Mr. Wey, a civil engineer, at the request of plaintiff. It shows block 47 of Hood's Canal Land & Improvement Company's plat of Union City, and the line of ordinary high tide, as established by Mr. Wey across lots 40 to 14, block 47, except that such tide line is not shown across the Kent property, lots 18 to 25, inclusive, block 47. This exhibit also shows Seattle street as the western boundary of block 47. It further shows the Navy Yard highway crossing lots 14 to 40, both inclusive. It further shows the location of the improvements on the Kent property.

Block 47, as shown on this exhibit, consists of two tiers of lots. To the north, or towards the water, are lots 1 to 13, inclusive. This tier of lots begins with lot 1 farthest to the west next to Seattle street, and extends easterly to and including lot 13. The above lots are referred to as the north half of block 47. Immediately to the south of the above lots are lots 14 to 40, block 47. Lot 40 is the lot farthest to the west in this tier, which extends east to and including lot 14. The Navy Yard highway, beginning at the east line of Seattle street, runs east across lots 40 to 14, both inclusive.

The line of ordinary high tide as established by Mr. Wey, beginning at the west line of lot 40 and proceeding east,

follows quite closely the north right of way line of the Navy Yard highway, sometimes being a little south of the line and sometimes a little north, until it gets to the west line of lot 25, which is the lot farthest to the west claimed by the Kents. No tide line is shown across lots 25, 24, 23, 22, 21, 20, 19, and 18, the lots owned by the Kents, but it begins at the west line of lot 17 and continues east across lots 17, 16, 15, and 14.

This exhibit also shows the Kent house located on lots 21 and 22, block 47, and bulkheads extending west over lots 23, 24, and 25, and east over lots 19 and 20.

While the trial court undoubtedly accepted as the true line of ordinary high tide the line established by Mr. Wey in 1941, and defendants so admit, yet in describing the tidelands awarded to the Kents the court did not use such line of ordinary high tide as the south boundary line, but used the north right of way line of the Navy Yard highway.

In view of the fact that by the decree it was determined that the lots in block 47 lying below the line of ordinary high tide were unlawfully included in the plat of Union City, our reference to those portions of such lots will only be for the purpose of more clearly locating the tidelands here involved.

The court decreed that Earl Kent and wife had been in open, notorious, hostile, and adverse and continuous possession of that portion of the second-class tidelands in front of lots 20 to 23, inclusive, block 47, more particularly described in the decree, for more than ten years prior to the commencement of this action, and had likewise been in such possession of that portion of the tidelands in front of lots 24 and 25, block 47, since June 21, 1933, and of that portion of the tidelands in front of lots 18 and 19, block 47, since July 24, 1935, all as more particularly described in the decree; that by such possession defendants Kent have acquired title by adverse possession to such property. Title in them was quieted against claims of plaintiff and all other persons whomsoever. Following is a description of the property above referred to:

"Beginning at the intersection of the northerly margin of the right of way of Primary State Highway No. 14 (Navy Yard Highway) with the westerly lot line of lot 25, block 47, Hood's Canal Land & Improvement Company's plat of Union City, running thence north along said lot line and said lot line extended a distance of 50 feet; thence easterly along a curve parallel to and 50 feet north of said northerly margin of said highway to the easterly lot line of lot 18 in block 47 extended northerly; thence south along said easterly lot line extended to the northerly margin of said right of way; said described tide lands being a portion of the second-class tide lands lying in front of government lot 4, section 32, township 22 north, range 3 west, W. M., Mason County, Washington."

It will be noticed that the court did not use the line of ordinary high tide as the south boundary line in the above description, but did use the northerly right of way line of the Navy Yard highway.

It may be noted that the above description does not cover all the second-class tidelands covered by lots 18 to 25, inclusive, block 47, but only such as may be included in the fifty-foot strip north of the north line of the highway.

The court also decreed that Helen McReavy Andersen had been in open, notorious, hostile, adverse, and continuous possession of the property hereinafter described for more than ten years prior to the commencement of the action, and by virtue of such possession had acquired title thereto by adverse possession. Mrs. Andersen's title was quieted in the following described property:

"Those portions of the second-class tide lands lying in front of government lot 4, section 32, township 22 north, range 3 west, W. M., Mason County, Washington, described as follows:

"Beginning at the intersection of the west line of lot 40, block 47, plat of Union City, with the line of ordinary high tide, said point being north 05° west eighty-five feet from the southwest corner of said lot 40, thence north 05° west 145.9 feet, thence south 80° east 336.7 feet, thence south 40 feet, thence west 250 feet, thence south to the intersection of the east line of lot 39 with the line on ordinary high tide, 59.1 feet, thence northwesterly along said line of ordinary high tide to beginning, except that portion of the right of

way of Primary State Highway No. 14 (Navy Yard Highway) and except also that portion awarded to Jack C. Hogan by the decree in cause No. 4075 of the above entitled court.

"Also, beginning at the intersection of the westerly lot line of lot 17, said block 47, with the line of ordinary high tide, running thence north 92.7 feet, thence east 100 feet, thence south to the intersection of the easterly lot line of lot 14, said block 47, with the line of ordinary high tide, thence southwesterly along the line of ordinary high tide to the point of beginning, except that portion of the right of way of Primary State Highway No. 14 (Navy Yard Highway)."

The property awarded to Mrs. Andersen covers what is shown on the plat of Union City as lots 1 to 13, inclusive, block 47, and that portion of lots 39 and 40, block 47, remaining after excepting the part within the right of way of Navy Yard highway, and the part awarded to Mr. Hogan, lying north of the line of ordinary high tide, and those portions of lots 14, 15, 16, and 17, block 47, lying north of the line of ordinary high tide. All of the property awarded to Mrs. Andersen is below the line of ordinary high tide, as established by Mr. Wey and shown on exhibits M and N.

The decree also provides that plaintiff is the owner of all second-class tidelands in front of government lot 4 between the line of ordinary high tide and the line of extreme low tide, except only those portions awarded to the state of Washington, Earl Kent and wife, and Helen McReavy Andersen, and also that portion awarded to Hogan in the companion case.

Plaintiff has appealed only from that portion of the decree which adjudges Earl Kent and wife to have acquired title to the tidelands awarded to them, and from that portion of the decree which adjudged Helen McReavy Andersen to have acquired title by adverse possession to the tidelands awarded to her. As we have stated, none of the defendants has cross-appealed.

In view of the fact that the factual bases for the claims of the respective respondents are different, we shall first discuss the evidence upon which the Andersen claims are based.

Appellant's assignments of error relative to that part of the decree which pertains to Mrs. Andersen are: (1) In refusing to quiet title in appellant to all the second-class tidelands described in the amended complaint; (2) in adjudging that respondent Andersen had acquired title by adverse possession to any portion of such tidelands.

Helen McReavy Andersen alleged that she and her predecessor in interest had been in open, notorious possession of certain lots in block 47 of Union City, and had paid taxes and made improvements thereon; that they had been in such possession of these *platted* lots for more than twenty years, and for all of that period had claimed ownership of the lots.

The decree in effect adjudged that neither Mrs. Andersen nor the Kents acquired title to the tidelands here in question by virtue of the deeds conveying to them certain lots in block 47, Union City; that, while the deeds did not convey title to the tidelands, they did constitute color of title; that such color of title, together with open, notorious, and adverse possession for the statutory period, established title by adverse possession.

While Mrs. Andersen alleged payment of taxes, the evidence shows she only paid taxes upon the property as platted property. Such payment would not be a sufficient payment of taxes on the tidelands to entitle her to the benefit of Rem. Rev. Stat., § 789 [P. C. § 7539]. However, Mrs. Andersen is claiming under the ten-year statute of limitation, and so the payment of taxes becomes immaterial.

■ May we say here that we are of the opinion that the evidence shows conclusively that neither appellant nor its predecessors in interest purchased the tidelands claimed by it according to Hood's Canal Land & Improvement Company's plat of Union City, but that the plat is referred to only for the purpose of fixing the west boundary line of the claimed tidelands. The deed from the state to Herbert E. McReavy (plaintiff's exhibit A) conveyed all tidelands of the second class in front of government lot 4, without reference to any plat. The deed from Herbert E. McReavy, a bachelor, to C. F. Yeaton (plaintiff's exhibit B) covered

that portion of the second-class tidelands in front of government lot 4 owned by the grantor, lying east of the east line of Seattle street. Yeaton and wife conveyed to appellant (plaintiff's exhibit D) an undivided one-third interest in and to the second-class tidelands acquired by the Yeatons from McReavy. Yeaton and wife conveyed to J. S. Graham (plaintiff's exhibit C) an undivided two-thirds interest in and to the second-class tidelands acquired by the Yeatons from McReavy. Appellant has since acquired all the Graham interest in the tidelands. There can be no question but that appellant and its predecessors in interest have held the record title to the second-class tidelands here in question since the deed from the state to Herbert E. McReavy in 1901, and have paid the taxes lawfully assessed against such tidelands.

 This being true, the only question really presented by this case is whether or not Mrs. Andersen and the Kents have established title by adverse possession to the second-class tidelands awarded to them. The burden of proof is on respondents. *Peoples Savings Bank v. Bufford,* 90 Wash. 204, 155 Pac. 1068; *Hawk v. Walthew,* 184 Wash. 673, 52 P. (2d) 1258.

 ██ John McReavy, father of respondent Helen McReavy Andersen, in 1904 acquired, by tax deed from Mason county, title to lots 1 to 13, 16, 17, 18, 19, 21 to 37, 39, and 40, block 47, Union City (defendant Andersen's exhibit 1). It will be noticed that lots 14 and 15, block 47, are not included in the above description. John McReavy died, and thereafter respondent, by conveyances from her mother and two brothers, who together with herself were the only heirs of John McReavy, acquired a paper title to the lots first above mentioned. At a tax sale in 1940, respondent purchased from Mason county lots 14 and 15, block 47. It will be recalled from the description of the tidelands awarded to Mrs. Andersen by the decree, that these tidelands cover a portion of purported lots 14, 15, 16, 17, 39, 40, and all of lots 1 to 13, inclusive, in block 47.

We can find no basis for awarding to respondent that portion of the tidelands below the line of ordinary high

tide, as established by the Wey survey, in front of lots 14 and 15, block 47, of the plat of Union City. Wherever the title to these two lots may have been prior to the execution of the tax deed of 1940, by that deed a new title was initiated. Respondent recognized the superior title in some one other than herself. There is no statute which would permit one to acquire title by adverse possession in less than seven years.

We are clearly of the opinion there is no basis for concluding that Mrs. Andersen acquired title by adverse possession to the second-class tidelands covered by that part of purported lots 14 and 15, block 47, below the line of ordinary high tide.

The principal acts relied upon by respondent to establish her ownership by adverse possession are these: (1) Certain milling operations conducted on some part of these lands by her family and others many years ago; (2) an easement granted by respondent to the Hoodsport Lumber Company in 1932; and (3) an oral lease to one Kearney covering lot 39. We shall discuss these operations in the order named.

Respondent testified that in 1889 and 1890 there was a sawmill located on lots 39 and 40, which was operated by her father. The area used in the booming operations in connection with the mill extended over the north half of block 47, just where is not clearly defined. (The north half of block 47 included lots 1 to 13, inclusive.) Following the closing of the sawmill, a shingle mill was operated upon the property. Respondent testified:

"I wouldn't know the years of the shingle mills. That was considerably later. I think that come down to and 'way over in the nineteen hundreds. That mill burned. I don't just have the date."

In addition there was some piling driven and respondent's parents had some small boats used by them and moored somewhere on the property. No further use was made of the property during the lifetime of respondent's father.

Title to the tidelands here in question was in the state until 1901, when they were conveyed to respondent's

brother, Herbert E. McReavy. Adverse possession will not run against the state. *State v. Seattle,* 57 Wash. 602, 107 Pac. 827, 27 L. R. A. (N.S.) 1188.

█ The only possible use made of these tidelands after title passed from the state, and in the lifetime of respondent's parents, was the shingle mill, which was leased. That this use by the operator of the shingle mill was not adverse, we think is quite conclusively shown by the deed from Herbert E. McReavy to Mr. Yeaton, covering the tidelands here in question (plaintiff's exhibit B). This deed was made subject to a lease issued by McReavy to the K & M Shingle Company of Union City. It thus appears that the shingle mill was operated subject to the rights of appellant's predecessor in interest, and that the lessee recognized a superior title.

It seems to us the acts testified to by respondent as having taken place during the lifetime of her father constituted no basis for a claim of adverse possession. The sawmill operations were long prior to the time the state conveyed the tidelands here in question. The shingle mill operations, which were not carried on by her father, recognized superior title in Herbert McReavy, appellant's predecessor in interest.

█ In 1932, Mrs. Andersen granted an easement to the Hoodsport Lumber Company (defendant Andersen's exhibit 4) "to log dump and rafting ground near postoffice at Union. . . ." Pursuant to this easement, booming operations were conducted by a Mr. Addleman for about two months in 1933. In the course of this work, some piles were driven into the tidelands. The exact location of these operations is somewhat vague and indefinite. The easement covered an undefined area "near the postoffice." That structure is situated west of Seattle street. Mr. Addleman testified that the land used was between a tavern known as Kuett's and the float. Just where these operations were, we have been unable to determine. They may possibly have been on some part of lots 39 and 40, block 47, and on some of the lots in the north half of block 47. During the course of the Addleman operations, an agent of appellant

informed Addleman that three of the piles he had driven were on appellant's property. According to Addleman, these three piles were located about one hundred fifty feet out from the "hind end" of the Hogan pile driver. When informed that these piles were located on appellant's land, Mr. Addleman paid to Mr. Johnson, appellant's agent, five dollars rental for each pile so placed, and after the operations were finished, the piles were pulled up.

It must be admitted that to support a claim of title by adverse possession, the possession must be continuous and uninterrupted. Aside from the fact that the Addleman operation was never, in our opinion, located with any certainty, it lasted only a short time, was not intended as a permanent arrangement, and entirely fails to support a claim to any particular area. In other words, the use was not of such a nature as to constitute notice of respondent's claim.

In *Roesch v. Gerst,* 18 Wn. (2d) 294, 138 P. (2d) 846, we restated the rules governing adverse possession under the ten-year statute in these words:

"Possession, to be adverse, must be actual and uninterrupted, open and notorious, hostile and exclusive, and under a claim of right made in good faith. To constitute title, it must have continued for the entire statutory period."

Applying this statement to the two foregoing claims of Mrs. Andersen, it is apparent, it seems to us, that there is a total failure of proof of any such possession or occupancy such as could form the basis for a claim of adverse possession on the part of respondent.

We shall now consider the third use of the land relied upon by respondent. In 1922, Mrs. Andersen gave one Kearney an oral lease covering purported lot 39, block 47. Mr. Kearney used some part of this property for mooring his houseboat. Mrs. Andersen testified that this houseboat was kept right near Mr. Hogan's house. Mr. Hogan testified that Mr. Kearney occupied the houseboat twelve or fourteen years, and until it burned down; that it was close to and just west of his (Hogan's) place. This would

probably locate the Kearney houseboat somewhere on lots 39 or 40, block 47, below the line of ordinary high tide.

Conceding that the Kearney houseboat was moored in one location somewhere on lot 39 long enough to cover the statutory period, we are of the opinion this was not such a use as would constitute a basis for respondent's claim to adverse possession. In the first place, Mr. Kearney's occupancy was not exclusive, as Mr. Hogan's structures also covered a portion of lot 39, block 47. Furthermore, we are not prepared to hold that the mooring of a floating structure such as this houseboat on tidelands, unaccompanied by any permanent improvements connected therewith, can be considered such open, notorious, and hostile possession as would give notice to the owner of such tidelands that someone was claiming title adversely to such owner.

No possession of any kind has been shown by respondent to the tidelands covered by a portion of lots 16 and 17, block 47, awarded to her by the decree.

After an examination of the evidence and the law applicable thereto, we are forced to the conclusion that respondent has wholly failed to overcome the presumption of seizin which attaches to ownership of the legal title. It follows that the judgment of the trial court must be and is reversed, with instruction to enter judgment in favor of appellant, quieting its title in the second-class tidelands awarded to respondent Andersen.

In support of our conclusion in connection with Mrs. Andersen's claim, we refer to and cite with approval the authorities cited in the companion case of *Bowden-Gazzam Co. v. Hogan, supra.*

We now come to the claims of respondents Kent and wife. We have hereinbefore set out in substance the answer of Kent and wife, but we desire to set out respondents' paper title, as shown by their answer.

The Kents acquired title to lots 20 to 23, inclusive, block 47, from Butler and wife in 1921 (defendant Kent's exhibit 1), lots 24 and 25, block 47, from Helen McReavy Andersen in 1933 (defendant Kent's exhibit 2), and lots 18 and 19,

block 47, from Helen Andersen in 1935 (defendant Kent's exhibit 3).

At the outset may we say that the deed from Helen McReavy Andersen to the Kents, under which they claim title to lots 18 and 19, block 47, was executed July 24, 1935. This action was filed February 5, 1942. It is thus apparent that the Kents did not have possession of these lots or the tidelands adjacent thereto for a period of seven years, the minimum length of time for acquiring title by adverse possession, nor is there any basis for a claim based upon any right or title to these tidelands in their grantor, Helen Andersen. Under this condition, the Kents could not possibly have acquired title by adverse possession to the second-class tidelands covered by that portion of lots 18 and 19, block 47, lying below the line of ordinary high tide.

While exhibit M, prepared by Mr. Wey, does not show the line of ordinary high tide across the Kent property, we are of the opinion that from his testimony it appears sufficiently clear that the line of ordinary high tide was not farther to the north than the bulkhead on lot 18 and what is referred to as the wooden bulkhead that extends over a portion of lot 19. This being true, the trial court erred in awarding to the Kents the second-class tidelands covered by lots 18 and 19, block 47, north of the structures referred to.

We shall now discuss lots 20 to 23, inclusive, acquired from Butler and wife. The court adjudged the Kents had acquired title by adverse possession under the ten-year statute to the second-class tidelands covered by that part of lots 20 to 23, inclusive, beginning at the north right of way line of the Navy Yard highway, and extending north fifty feet. The north boundary line of the tidelands covered by the four lots last named was undoubtedly determined from the testimony of Mrs. Kent, who stated that there were two stakes out on the beach and that they were about fifty feet north of the north line of the highway. The Kents do not claim to own the tidelands north of the stakes mentioned, although these lots, as shown on the plat of Union City, extend considerably farther to the north than the stakes

mentioned. The court also fixed the northern boundary line of the tidelands acquired by respondent in front of lots 18 and 19 and 24 and 25 to be a line fifty feet north of and parallel to the north right of way line of the Navy Yard highway.

Appellant makes the following assignments of error to that part of the decree quieting title in the Kents to the tidelands above described: The court erred (1) in adjudging that respondents had acquired title by adverse possession to the tidelands in front of lots 18, 19, 24, and 25, block 47; (2) in adjudging that respondents had acquired title by adverse possession to any part of the unenclosed portion of the tidelands in front of lots 20 to 23, inclusive, block 47, and any portion which had not been covered or enclosed by encroachments more than ten years prior to such suit.

We have hereinbefore stated our conclusion as to the tidelands in front of lots 18 and 19, block 47.

On the plat of Union City at least a portion of lots 20 to 23, block 47, was laid out over the water, thereby purporting to cover tidelands. The court decreed the plat of Union City to be void in so far as it purported to cover tidelands.

When the Kents purchased these four lots from the Butlers, they made no inquiry relative to the title to the tidelands, but thought their land ran down onto the beach. In 1923 the Kents erected their house, and have been adding to it from time to time since that date. They also constructed bulkheads along the water side of the property, and dug a well, obtaining artesian water out below the high water line. In the course of this building, the high water mark was obliterated, but at high tide the water is well up against the bulkheads constructed by respondents, and a part of the house itself extends below the line of high water.

Portions of the beach in front of lots 21 to 23 have been used at different times for mooring respondents' boat, and for a platform and springboard. Mrs. Kent testified she planted oysters along the beach.

Respondents testified that shortly after moving into their house they noticed two stakes out in the water fifty feet

from the highway, one on the eastern boundary line of lot 20 and the other on the western boundary line of lot 23. They assumed these stakes marked the northern boundary line of their property, and they have always claimed to those stakes and no farther. The existence of the stakes prior to 1941, as well as their significance, at all times is disputed, but the trial court apparently accepted respondents' testimony in this regard, and we accept the judgment of the court on this point.

In about 1932, Mrs. Kent approached Mr. Gazzam, with the object of purchasing from him certain tidelands in the vicinity of the Kent property. The property which was the subject of that discussion is claimed by appellant to be that involved in this action, but by respondent to be other tidelands beyond and adjoining that with which we are here concerned. While this point is of considerable importance in evidencing the adverse or hostile intent with which the Kents claimed the property in question, and also in determining whether or not at that time respondents were acknowledging a superior title to these tidelands, the evidence is in direct conflict. We are therefore of the opinion that we should follow the trial court and accept respondents' view of this incident.

Considering all the evidence in connection with those portions of lots 20 to 23, inclusive, block 47, covered by the decree, we are of the opinion there was sufficient evidence submitted to justify the trial court in concluding that respondents had, by adverse possession under the ten-year statute, established title to the second-class tidelands in front of lots 20 to 23, inclusive, described in the decree.

We do not deem it necessary to here discuss the authority dealing with the question of adverse possession, other than to again refer to the companion case of *Bowden-Gazzam Co. v. Hogan, supra,* where the authorities are cited and discussed.

Based upon the facts in this case and the authorities cited in the *Hogan* case, we are of the opinion the judgment of the trial court must be and is affirmed as to that part of the

second-class tidelands in front of lots 20 to 23, inclusive, block 47, described in the decree.

A somewhat different problem is presented in regard to the two remaining lots claimed by respondents; namely, lots 24 and 25, block 47. It is claimed that title to the tidelands in front of these lots was established by adverse possession under Rem. Rev. Stat., § 786 [P. C. § 7536], which reads as follows:

"All actions brought for the recovery of any lands, tenements or hereditaments of which any person may be possessed by actual, open and notorious possession for seven successive years, having a connected title in law or equity deducible of record from this state or the United States, or from any public officer, or other person authorized by the laws of this state to sell such land for the nonpayment of taxes, or from any sheriff, marshal or other person authorized to sell such land on execution or under any order, judgment or decree of any court of record, shall be brought within seven years next after possession being taken as aforesaid, but when the possessor shall acquire title after taking such possession, the limitation shall begin to run from the time of acquiring title."

Respondents proved such a connected title to these lots, taking directly by deed from Helen Andersen in 1933. The occasion for the purchase of these lots was the discovery that some of the improvements placed upon the land by the Kents had extended beyond their property; that is, beyond lots 20 to 23, inclusive, onto the upland owned by Mrs. Andersen, and presumably upon the tidelands claimed by her. Upon making this discovery, the respondents purchased lots 24 and 25, and improved the lots by the construction of a concrete bulkhead, a cabin, garage, and other outbuildings. Here, as on the four lots (20 to 23, inclusive), the line of high tide had been obliterated by the bulkhead and other structures.

The trial court quieted title in respondents to the tidelands covered by that part of purported lots 24 and 25 between the northerly line of the right of way of the Navy Yard highway and a line fifty feet north of such highway line. We can find nothing in the evidence to justify the

fixing of the north boundary line of the tidelands in front of these lots fifty feet north of the north line of the Navy Yard highway. There is no evidence that we have been able to find indicating that respondents ever used or claimed more of the tidelands in front of these lots than was actually covered by the improvements placed thereon. As appears from the exhibits here, none of the improvements on these lots are more than twenty-five feet north of the highway right of way line.

While here again exhibit M, prepared by Mr. Wey, does not show the line of ordinary high tide across lots 24 and 25, block 47, we are of the opinion the testimony of Mr. Wey did establish that, from his investigation of the contour of the ground on the Kent property, the line of ordinary high tide on this property would not, in his opinion, greatly vary north or south from a line extended from the point on the west line of lot 25 easterly to connect with the established tide line at the east line of lot 18. From this and other testimony, we are satisfied that the line of ordinary high tide in front of lots 24 and 25 is not farther north than the most northerly line of respondents' improvements on these lots, and that the trial court erred in fixing the north boundary line of the tidelands in front of these two lots fifty feet north of the north line of the highway right of way.

The judgment of the trial court therefore is modified in regard to the tidelands in front of lots 24 and 25, block 47, with instructions to enter judgment quieting title in respondents to that part of the second-class tidelands in front of lots 24 and 25 bounded on the south by the north right of way line of the Navy Yard highway, and on the north by a line extended east and west across the lots from the most northerly line of respondents' improvements.

The judgment of the trial court is reversed in so far as it awarded to respondent Helen McReavy Andersen second-class tidelands below the line of ordinary high tide in front of government lot 4, and the cause is remanded with instructions to the trial court to quiet title in appellant to the second-class tidelands awarded to respondent.

The judgment of the trial court is modified in so far as it awarded to respondents Kent second-class tidelands in front of lots 18, 19, 24, and 25, block 47, and the court is instructed to enter judgment awarding to respondents Kent only so much of the second-class tidelands in front of lots 18, 19, 24, and 25, block 47, as indicated in this opinion. The judgment of the trial court is affirmed in so far as it awarded to respondents Kent second-class tidelands in front of lots 20 to 23, inclusive, block 47.

The judgment entered in this cause will be affirmed, except as above indicated.

In view of the fact that both appellant and respondents have prevailed to a certain extent in this appeal, we are of the opinion neither party should be awarded costs.

SIMPSON, C. J., MILLARD, STEINERT, and GRADY, JJ., concur.

[1] Reported in 154 P. (2d) 283.