[No. 30360. Department One. March 18, 1948.]

THE STATE OF WASHINGTON, *Respondent,* v. OTIS SHEPARDSON *et al., Appellants.*[1]

*William Lee Parr,* for appellants.

[1]Reported in 191 P. (2d) 286.

*The Attorney General* and *William C. Klein, Assistant,* for respondent.

MILLARD, J.—This action was instituted by the state to quiet title to the following described tract of land acquired by deed from George Miller in 1911, located on the William M. Murphy donation land claim No. 37 in section 27, township 3 north, range 8 east of the Willamette Meridian, in Skamania county:

Beginning at the northwest corner of William M. Murphy donation land claim No. 37; thence east 447.03 feet; thence south 14° 15′ west 193.50 feet; thence north 82° 43′ east 107 feet; thence south 28° 31′ west 260 feet; thence south 19° 17′ east 471 feet; thence south 84° 28′ west 89.5 feet; thence north 24° west 142 feet; thence north 14° west 60 feet; thence north 23° west 93 feet; thence north 26° west 100 feet; thence north 44° west 200 feet; thence north 47° west 116 feet; thence north 43° west 111.4 feet; thence west 71.31 feet; and thence north 22° east 201.5 feet to the point of beginning, containing an area of 4.82 acres, more or less.

Plaintiff's predecessors in interest obtained record title of the above-described land through mesne conveyances flowing from a patent issued by the United States of America, March 14, 1883, granting the lands embraced within the William M. Murphy donation land claim.

Defendants' predecessors in interest obtained record title to the north half of the northeast quarter, and lots 1, 4, and 8, of section 27, township 3 north, range 8 east of the Willamette Meridian, in Skamania county, Washington, through mesne conveyances flowing from a patent issued July 9, 1894, based upon a patent issued under the homestead act of May 20, 1862, to Plinny Shepardson, one of defendant husband's ancestors.

Immediately following acquisition of the above-described Miller tract of land in 1911, the state built thereon a fish hatchery, which it maintained until 1939. Defendants then moved into the fish hatchery, where they have resided since the state discontinued its use in 1939. In 1937, shortly prior to construction of the Bonneville dam across the Columbia river, the United States army engineers made a complete

survey of all of the lands which might be damaged as a result of construction of the dam.

Plaintiff alleged that defendants were unlawfully in possession of a portion of the above-described Miller tract of land lying north of the east and west center line of section 27. It is plaintiff's position that the northern boundary line of the Murphy donation land claim is one hundred feet north of what is now recognized to be the east and west center line of section 27 at one corner and ninety feet north of that line at the other corner. Defendants insist that the northern boundary line of the Murphy donation land claim is coincidental with the east-west center line of section 27. Briefly stated, the controversy is over the location of the dividing line of the Miller tract of land and defendants' lot No. 4.

Trial of the cause to the court resulted in findings of fact and conclusions of law in favor of plaintiff. From the decree based thereon quieting title to the land in question in plaintiff, defendants appealed.

█ Contending that the original northeast and northwest corners of the Murphy donation land claim were lost and not capable of identification, appellants invoke the rule that, where no government monument or marking of a quarter corner can be found, the corner shall be located halfway between the east and west corners of the section.

It was incumbent upon appellants to sustain the burden of proof that the corners were lost before they were entitled to apply the rule invoked. *Lappenbusch v. Florkow,* 175 Wash. 23, 26 P. (2d) 388.

"There is a distinction between a lost corner and a corner the markings of which have been obliterated. If no monument or marking of a quarter corner can be found, or the testimony of its location be overcome by better evidence, a court will decree the establishment of a corner under the rule prevailing in the land department of the United States; that is, at a point equidistant from the section corners. *King v. Carmichael,* 45 Wash. 127, 87 Pac. 1120; *Koenig v. Whatcom Falls Mill Co., supra.* But it does not follow that, if there be evidence of a corner which has been destroyed or obliterated by the lapse of time, a court will direct the establishment of a corner under the rule stated, or any other rule, for the law establishes an obliterated corner

where the surveyor actually located it, and not where it ought to be located by a correct survey." *Hale v. Ball,* 70 Wash. 435, 126 Pac. 942.

■ The question presented is largely one of fact, and we are bound by the findings of the trial court unless we are convinced that the evidence preponderates against the findings.

The trial court found that the official government survey of the Murphy donation land claim, as evidenced and recorded by the field notes of the survey of the donation land claim, approved August 13, 1878, describes the precise area of land granted by patent issued by the United States, March 14, 1883; and that a survey made in 1936 of the land acquired in 1911 by respondent from George Miller, verified the correctness of the calls, courses, and distances recited in the deed. The court further found that a resurvey of the same area, made in 1937 by the United States war department, verified the correctness of a survey previously made by respondent state and the correctness of the calls, courses, and distances set out in the Miller deed to respondent, as well as the correctness of the original survey of the William M. Murphy donation land claim of August, 1878. The court also found that the government resurvey of 1937 verified the location of the northwest and northeast corners of the Murphy donation land claim and, pursuant to that verification, a corps of engineers of the United States government set United States monuments on the northwest and northeast corners.

■ The evidence preponderantly supports the findings and sustains the contention of respondent as to the location of the boundary in question. A photostatic copy of the deed through which respondent claims title, a photostatic copy of the field notes of the original government survey of the lands by the cadastral engineer, located at Olympia, a map (prepared by a licensed civil engineer and a surveyor who surveyed the premises in 1936) showing the boundary is located where respondent insists it is, a map prepared by the war department following its survey of the area in 1937 showing the boundary to be as respondent claims, and

photostatic copies of the field notes made in connection with the survey by the United States war department, were introduced in evidence.

A civil engineer of more than four decades' experience in that profession testified that he made a survey in 1937 of the boundary in question and that, using the field notes of the original government survey, he found the north and east boundaries of the Murphy donation land claim to be as represented on the map introduced in evidence by respondent. He testified that he found the northeast and northwest corners, which, of course, are the east-west extremities of the boundary under discussion, with the aid of the field notes of the original government survey.

A licensed civil engineer and surveyor, who has been engaged in his profession for forty-one years, testified that the survey made under his direction by the witness mentioned, describes the boundary in dispute as being north of the east-west center section line of section 27, and that respondent's map, which was prepared by a corps of engineers of the United States army, correctly shows the boundaries of the property in dispute.

Another civil engineer testified that, by a survey made by him in 1936 to retrace the boundaries found in respondent's deed, he found one of the bearing trees described in the field notes of the original government survey, which was used to establish the northwest corner of the Murphy donation land claim. After locating this corner, he completed the survey of the area in question and found the boundary in dispute to be north of the east-west center section line of section 27 in the same position in which it appears on the map prepared by the United States army engineers, from their survey made approximately one year thereafter.

One of appellants' witnesses, a civil engineer and surveyor, testified that he found no evidence of a corner at the place respondent alleges is the northwest corner of the donation land claim, but that appellants told him that the ash tree, thought to be a bearing tree, had been cut down and that the corner was under water. He testified that, at the point claimed to be the northeast corner, he found the

tree which respondent's witnesses and others found to be the bearing tree referred to in the field notes of the original survey. He was of the opinion that there was nothing to establish the live tree referred to as a bearing tree, and he thought the cut in the tree was a scar and not a blaze. As for the stump, which the other surveyors found to correspond with the thirty-six inch fir in the original government field notes, this witness testified that, because he was satisfied that the live tree was not the bearing tree, the rotted stump was of no evidentiary value.

Another witness, a professional forest products man, w¹· testified on behalf of appellants, was of the opinion that the scar on the tree, which appellants' surveyor did not believe had evidence of being a bearing tree, was made between twenty and twenty-five years ago.

The evidence on the part of appellants only affects the weight of the evidence on the part of respondent as to whether the bearing tree mentioned by the surveyors as an aid in locating the northeast corner of the Murphy claim was where the surveyors testified it was located.

Appellants failed to sustain the burden of proof imposed upon them to establish that the government corners were lost. The evidence preponderantly sustains the finding that respondent found the original northeast and northwest corners of the Murphy donation land claim and that the government corners were not lost; hence, the rule invoked by appellants as to relocation of a lost corner is inapplicable. We are bound by the findings of the trial court unless convinced that the evidence preponderates against the findings. *Lappenbusch v. Florkow,* 175 Wash. 23, 26 P. (2d) 388.

The judgment is affirmed.

MALLERY, C. J., SIMPSON, SCHWELLENBACH, and HILL, JJ., concur.