[No. 30629. Department Two. December 17, 1948.]

A. N. YOUNG, *Respondent*, v. THOMAS NEWBRO *et al.*, *Appellants.*[1]

*Ralph Purvis*, for appellants.

*Curtis H. Coons*, for respondent.

[1]Reported in 200 P. (2d) 975.

SCHWELLENBACH, J.—This is an appeal from a judgment quieting title, by virtue of adverse possession, to a disputed strip of land.

In 1935, C. Edward McCormick sold to Mr. Young the east half of the northwest quarter of the southeast quarter of section 7, township 23 north, range 1, E.W.M. This action involves a piece of land situated directly east of the true eastern boundary of Young's land, measuring 163.46 feet on its north boundary, 140.50 feet on its south boundary, and 1,319.21 feet on its east and west boundaries. A survey, made about a year before the trial, developed that the western boundary of the disputed area was the true boundary of Mr. Young's property.

At the time Mr. Young took possession, there was a boundary fence to the north of his property, running north and south, along the eastern boundary of the strip claimed by him. He continued that fence south for about one thousand feet, into a bog or swamp. He used this as his eastern boundary and then erected cross fences for the purpose of keeping in goats and cattle. He began to clear the area, and, as he cleared, he scattered seed over the land for pasture.

He entered the service in September, 1942, returning in July or August, 1945. While he was away, his wife kept up the place, gradually disposing of the stock. During that time, she sold peat from the disputed area to one Hoffman. The spring before the trial, Young took down the cross fences and started to prepare the ground for blueberry planting.

In the meantime, Newbro bought property to the east of and adjacent to Young's property, and, in the spring of 1947, sold it to Teel. Teel is in the business of wholesale sand and gravel and peat soil, selling the latter to be used as subsoil for landscaping. This dispute arose when Teel put a bulldozer into the disputed area and attempted to take some of the peat.

The trial court held that Young was entitled to the disputed area by virtue of adverse possession.

Error is assigned, (1) in finding that the possession by respondent of the disputed area was adverse, hostile, open, and notorious; (2) in finding that the possession was continuous; (3) in finding that the possession continued for more than ten years; (4) in entering judgment for respondent; and (5) in refusing to award appellants judgment on their cross-complaint in the sum of five hundred dollars.

Rem. Rev. Stat., § 156 [P.P.C. § 73-3], provides:

"The period prescribed in the preceding section for the commencement of actions shall be as follows:

"Within ten years,—

"1. Actions for the recovery of real property, or for the recovery of the possession thereof, and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the premises in question within ten years before the commencement of the action."

■ The mere possession of land beyond the real boundary line is not sufficient to make such holding adverse. There must be, in addition to that, an intention to claim title to the disputed area and to hold as the owner. We said, in *King v. Bassindale,* 127 Wash. 189, 220 Pac. 777:

"But the term 'hostile,' as here used, does not import enmity or ill-will, but rather imports that the claimant is in possession as owner, in contradistinction to holding in recognition of or subordination to the true owner."

See, also, *Bowden-Gazzam Co. v. Hogan,* 22 Wn. (2d) 27, 154 P. (2d) 285.

Appellants contend that the construction of the fence by respondent was for one purpose only, namely, to enclose the goats of respondent, relying upon our decision in *Hawk v. Walthew,* 184 Wash. 673, 52 P. (2d) 1258. Therein we held that a fence had not been erected as a boundary fence, but as one to control pasturage, and that therefore the possession was not of such a character as would establish an adverse title. We agree with the rule as contended for by appellants. However, the mere building of a fence on disputed land for pasturage, would not militate against a claim of adverse holding, if the use of such land were an

incident under a claim of right. The question in each case is whether a property fence is maintained as a matter of convenience, or under a claim of ownership.

Appellant Newbro testified that he talked to respondent about boundary lines, but that he (respondent) was positive about his corner. He testified:

"Q. Now, have you ever had any conversations with Mr. Young about this swamp and about these corrals and about any boundary lines? A. I approached or contacted Mr. Young one time and asked him about trying to get a survey on it and getting a settlement on the boundary line, but he was so positive of his corner, he wouldn't talk about getting an official surveyor. He talked about getting out among lawyers. Q. Did he show you his corner, then? A. It was northeast. (Using pointer on map) It would be this corner, here."

Mrs. Florence B. Smith, former wife of respondent, called as a witness for appellants, testified:

"Q. Did Mr. Young ever clear out that swamp and cultivate it? A. Oh, yes, he cleared the south end and as he cleared he found these posts standing in the middle, running from our house to the east side of our twenty, which we assumed was the line. As he cleared, he built a fence and we had goats. And by the time of 1938 we had 90 head of stock—Angora and other goats. We had several corrals, and as he cleared, he scattered seeds for hay over the land for pasture. Q. When were the pastures planted? A. In '37 and '38—"

■ From the testimony, which was in dispute, the trial court was justified in finding that respondent held the property as owner, and not subservient to the rights of another.

This disposes of the other contentions of appellants, that the possession of respondent was not continuous and did not exist for ten years. Appellants claim that the fence was not completed until 1938, and that it was removed in 1947. The question before us is whether the *land* was held adversely for ten years. During the years that the fence was in existence, the land was used for pasturage; but, from the time respondent first went into possession up to the date of trial, he held and occupied the land as owner, making such con-

tinuous use thereof as was consistent with its character.

Appellants' counterclaim for damages in the sum of five hundred dollars is based upon their claim of title to the disputed area. This question having been decided adversely to them, it follows that they are not entitled to damages.

The judgment is affirmed.

MALLERY, C. J., MILLARD, ROBINSON, and SIMPSON, JJ., concur.