[No. 1371. Decided July 9, 1894.]

GEORGE H. GREER, *Respondent*, v. WILLIAM SQUIRE, *Appellant*.

TRIAL — FINDINGS OF FACT — PUBLIC SURVEY — QUARTER SECTION CORNERS — QUESTION OF LOCATION — APPEAL — REMAND WITH RIGHT TO AMEND PLEADINGS.

Although there should be findings of fact made by the court to sustain a judgment, yet an appeal will not be dismissed for want thereof upon motion of the prevailing party, in whose interest such findings should have been made.

The true corner of a government quarter section of land is where the United States surveyor established it, notwithstanding its location may not be such as is designated in the plat or field notes.

Where, upon the review of an equitable cause upon appeal, it appears from the evidence that respondent, who was plaintiff below, might be entitled to relief upon another theory of the case than the one upon which it was tried, the appellate court will, upon a reversal of the judgment, grant leave to the respondent to amend its complaint in accordance with the facts proven.

*Appeal from Superior Court, Pierce County.*

*Ira A. Town*, and *W. W. Likens*, for appellant.

*Parsons, Corell & Parsons*, and *C. P. Culver*, for respondent.

The opinion of the court was delivered by

DUNBAR, C. J.— Respondent moves to dismiss this appeal for the reason that there are no exceptions to the

findings of fact and no request to find any other facts. We think the exceptions taken were sufficient. There should have been findings of fact to sustain the judgment, but the findings should be made in the interest of the prevailing party, the respondent here, and he should not be allowed to plead an omission on his part to prevent this court from hearing the case upon the merits. The motion will, therefore, be denied.

This case involves a question of an irregular government survey of section lines, or rather of subdivision lines of sections. In 1882 respondent Greer sold to appellant Squire a certain tract of land, a portion of the description of which was as follows: "The southwest quarter of section thirty, tp. 20, N. R. 3 E., W. M.," containing, with other lands described in the deed, "304 acres more or less." At the time of the purchase it appears from the evidence that the land was surveyed and the north line of the land described in the deed was established and a fence erected on said line, if not with the assistance, at least by the consent, of the respondent. The appellant entered into possession of the land, while the respondent maintained possession of the land immediately north of the line established and upon which the fence was erected, he claiming to own said land north of said line under a homestead claim. Several years after, viz., in ———, it was discovered, or claimed to be discovered, that by the original survey made by the United States deputy surveyor, sec. 30 had not been divided equally from north to south by running the line an equal distance between the north and south boundaries of the section, but that, commencing at the center of the east boundary of the section the line had been run in a diagonal direction bearing north, and the quarter post established fifty-five chains north of the southwest corner of the section instead of forty chains north, which would have been an equal division of the

section; thereby, if following the literal description of the deed, making the northern boundary of the land conveyed on the west side of the section, fifteen chains north of the point which was presumed to be the northwest corner of the land sold, at the time the deed was executed and possession taken under it, and thereby increasing the area of the land described in the deed to the extent of about forty-two acres. After the discovery of this irregular survey the appellant claimed title to this excess, and this action was brought by the respondent to quiet his title to the same.

It is claimed by the appellant, as we have above stated, that the land actually sold was marked out on the face of the earth so that the number of acres was found to be 304, and that it was actually sold at so much per acre. This case was before this court before and is reported in 2 Wash. 209 (26 Pac. 222). The judgment of the trial court in that case was reversed and the case remanded to the lower court with instructions to re-try the same in accordance with the opinion rendered by this court. It seems to us, however, that the case has been tried on the same theory as that upon which it was tried before it came to this court in the first instance. It is possible that the opinion expressed by this court was not as clear and distinct as it should have been and may have unfortunately misled the appellant in his construction of the same. In that case the statement of facts certified to by the court was as follows:

"The only question involved and the only point in controversy herein is as to the government location of the northwest corner of the southwest quarter of sec. 30, tp. 20, N. R. 3 E., W. M. The plaintiff contends that it is forty chains north of the southwest corner of sec. 30, and the defendant contends that it is fifty-five chains north of the southwest corner of sec. 30," etc.

And this court, from the best information it could get, said:

"While the record here does not disclose the testimony sufficient for this court to determine definitely the rights of the parties, it does disclose enough to show error in the court, in that the conclusions of law were not justified by the statement of facts; and we conclude that the judgment of the court was rendered on the theory that the court could correct the government surveys, and establish government corners at points other than the points located by the government. This seems to have been the theory on which the case was tried. The presumption is that the grantor intended to convey the lands embraced within the boundaries described according to the government survey; and the investigation of the court must be directed towards ascertaining the fact where the government corners are actually established, and not where they ought to have been established."

It probably might have been well if the opinion of the court had stopped here, as it is evidently the portion expressed afterwards that the appellant has relied upon, and that portion of the opinion would more pertinently apply in cases where a reformation of a deed was sought. But it seems to us that, construing this opinion with reference to the case that the court was adjudicating, it can be plainly seen that the court reversed the case for the purpose of ascertaining where the government corners were *actually* located, and that when this fact was determined it would be the controlling fact in the case; for we think the law is well established that the true corner is where the United States surveyor established it, notwithstanding its location may not be such as is designated in the plat or field notes.

In *Campbell v. Clark*, 8 Mo. 553, it was held that in ascertaining the boundaries of lands purchased from the United States according to the government surveys, the boundary lines actually run and marked by the public surveyors are to be taken and considered as the true bound-

aries, although such marked boundaries may not correspond with the courses and distances.    That the sections and their subdivisions thus ascertained are to be considered as containing the exact quantity expressed in the returns of the surveyors, whatever may be the actual quantity contained in such sections and subdivisions.    And it was also held that although such corners or boundaries may have been effaced or destroyed, yet if the locality be established by other testimony it would prevail, even though the computed contents did not correspond with such monuments.

In *McEvoy v. Loyd*, 31 Wis. 142, it was held that "a conveyance of the east half of a certain quarter section of land containing twenty acres according to the government survey, conveys the whole of the described subdivision as determined by the monuments established by the original survey, whatever may be the actual quantity of land therein." In that case the court said:

"Therefore the language in this conveyance, 'containing twenty acres according to the government survey,' does not limit the quantity conveyed, providing there were more in this subdivision than that amount.    For it was the manifest intention of the parties to convey according to the government survey; and if there had happened to have been a deficiency in this subdivision, the plaintiff would not have been required to make the quantity conveyed 'twenty acres.' "

In *Martin v. Carlin*, 19 Wis. 454 ( 88 Am. Dec. 696 ); it was held that original monuments, when ascertained, are satisfactory and conclusive evidence of the lines originally run, which are the true boundaries of the tract surveyed whether they correspond with the plat and field notes of the survey or not.    "Monuments," say the court, "are facts; the field notes and plats indicating courses, distances and quantities, are but descriptions which serve to assist in ascertaining those facts."

In fact, we think there is no authority which does not sus-

tain this rule.  The case of *Cragin v. Powell*, 128 U. S. 691 (9 Sup. Ct. 203), cited and relied upon by respondent, in no way tends to support respondent's contention, but especially prohibits the courts from changing the surveys originally made by the government surveyors.  There it was enunciated, "that the power to make and correct surveys of the public lands belongs to the political department of the government, and 'the reason of this rule,' " say the court, quoting the opinion of Justice CATRON in the case of *Haydel v. Dufresne*, 17 How. 23, "is that great confusion and litigation would ensue if the judicial tribunals, state and federal, were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done and divisions more equitably made than the department of public lands could do."

We have examined the other cases cited by respondent and are unable to discover that they in any wise militate against the rule laid down above.  This was the rule laid down by this court in *Cadeau v. Elliott*, 7 Wash. 205 (34 Pac. 916); although the court in that case, we think very correctly, stated that the presumption would attach that the corners had been established at the places indicated by such field notes, and that the burden is upon him who disputes their correctness, and that the proof of such actual establishment must be clear and convincing; and though, under all the circumstances of this case as shown by the record, we are loth to disturb this verdict, yet it seems to us that under the law, and the testimony which we are compelled to take notice of and which seems to us to be clear and positive, or as clear and positive as testimony can well be concerning the establishment of disputed government corners, and which testimony is virtually uncontradicted, we are forced to the conclusion that the original corner as established by the United States deputy surveyor was not at a point equi-

distant between the north and south boundaries of sec. 30, but that it was 55 chains north of said south boundary, and that the land described in the deed is in the northwest quarter of the southwest quarter of said sec. 30.

Upon the second trial of this case in the court below the court, imposing what seems to us to be rather severe terms, allowed the respondent to amend his complaint to correspond with the facts proven, but, by an inspection of the amended complaint, we are unable to see that it materially differs from the first amended complaint.    Under the allegations of the second amended complaint the only question contested, or which could be legally contested, was whether the land in dispute was in the southwest quarter or the northwest quarter of sec. 30.    If the land described was as a matter of fact not actually the land which was intended to be conveyed by the contracting parties, the respondent's remedy would be an action for the reformation of the deed; but this remedy not having been sought in this action, and the proof conclusively showing to our minds that the land in controversy falls within the description in the deed, the judgment must be reversed.    But inasmuch as this is an equitable cause over which the court has complete jurisdiction, and the record in our opinion exhibits a state of facts which are properly triable under such a complaint as we have above indicated, we think it would be too harsh a judgment to dismiss the cause, but the case will be remitted to the lower court with leave to respondent to amend his complaint.    It is true that the court allowed one amendment and respondent did not avail himself of his proper rights; but, inasmuch as it is possible that he was misled by the former opinion of this court, we do not think that he ought now to be precluded from offering the proper amendment, if he so desires.

The judgment will, therefore, be reversed with leave to amend as above indicated.

ANDERS, HOYT, SCOTT and STILES, JJ., concur.