[No. 22715. Department One. October 22, 1930.]

C. E. WILSON, *Appellant*, v. CREECH BROS. CONTRACTING COMPANY, *Defendant*, VICTOR ANDERSON, *Respondent*.[1]

*J. W. Graham,* for appellant.
*E. E. Boner,* for respondents.

PARKER, J.—The plaintiff, Wilson, commenced an action in the superior court for Mason county, seeking recovery from the defendants, contracting company and Anderson, alleging damages suffered by him as the result of their trespassing upon his land and removing standing timber therefrom on and after June

[1]Reported in 292 Pac. 109.

1, 1928. Thereafter the plaintiff commenced another action against the defendants, alleging damages suffered by him as the result of their trespassing upon his land and removing standing timber therefrom on and after July 15, 1929. These actions were, by agreement of the parties, consolidated and proceeded to trial as one action before the superior court sitting without a jury, which resulted in findings and judgment denying to the plaintiff any recovery, from which he has appealed to this court; contending here that the trial court erred in denying him recovery against the defendant Anderson, conceding that he is not entitled to any recovery against the defendant contracting company.

Appellant, Wilson, is the owner of the northeast quarter of section 14, township 19, range 5, in Mason county. Respondent, Anderson, is the owner of the northwest quarter of that section. At the respective times in question, Anderson was carrying on logging operations upon his land. Wilson claims that, while Anderson was so carrying on logging operations, he trespassed upon his (Wilson's) land and removed a quantity of standing timber therefrom along the northerly portion of the common boundary between the two quarter sections. It is for such claimed wrongful removal of timber that Wilson seeks recovery. The right of the controversy, other than as to the amount of damages, will be found largely in the answer to the question of where, upon the ground, is the correct location of the north quarter section corner establishing the northerly terminus of the boundary line between the two quarter sections.

It is contended in behalf of Wilson, the owner of the east quarter section, that the original government survey location of the north quarter corner of the section is lost, and has been reestablished by a recent survey

at a point equidistant between the northeast and northwest corners of the section, the original government locations of which are known. It is contended in behalf of Anderson, the owner of the west quarter section, that the original government survey location of the north quarter corner is not lost, and has been proven, by evidence introduced upon the trial, to be at a point some three hundred feet east of the claimed reestablished quarter corner, and that evidence introduced upon the trial established the fact that Anderson's logging operations and removal of timber fell considerably short of extending easterly to a line running south from such original government survey location of the quarter corner.

When Wilson suspected that Anderson's logging operations were being carried on and timber was thereby being removed from his land east of the common boundary, Wilson caused H. E. Munson, who was considerably experienced as a surveyor and locator of government lines and corners, though not a professional civil engineer, to locate upon the ground the north quarter corner of the section, with a view of determining the common boundary between the two quarter sections, Wilson being then evidently of the opinion that the original government survey location of that corner was lost and could not be found. Munson, being also of that opinion, and having in his possession a certified copy of the United States government survey field notes of that section, proceeded by measurements to establish the location of the quarter corner equidistant between the northeast and northwest corners of the section, the original government survey locations of which were known.

The government field notes were not introduced in evidence, but Munson was permitted, without objection, to testify as to their contents relating to the dis-

tance of the location of the quarter corner east of a small stream; that is, that the government survey notes show that the original quarter post was set 396 feet east of that stream, which is in existence apparently as it was at the time of the making of the original government survey. Munson found the equidistant point between the northeast and northwest corners of the section to be fifty-four feet farther east of that stream, and determined that to be the true location of the quarter section corner, its original location being, as he concluded, lost. Munson then ran a line southerly from the corner so established by him, as marking the common boundary between the two quarter sections.

We notice these facts touching the making of the Munson survey and his location of the quarter corner, not so much as bearing upon the question of the correctness of his survey and location of the quarter corner, but particularly as showing his location of the quarter corner being even farther east than called for by the government survey notes showing the distance that survey located the corner east of the stream.

After the making of the Munson survey, Anderson caused S. B. Judson, an experienced engineer, to locate upon the ground the north quarter section corner and establish the north and south common boundary between the two quarter sections running southerly from that corner. Judson, after research upon his part, becoming convinced that the original government survey location of the quarter corner had become lost, proceeded, as Munson had, to reestablish that corner equidistant between the northeast and northwest corners of the section. He so established it some forty feet east of the corner as established by Munson, and manifestly farther east of the stream than the government notes called for.

He then established a line as the common boundary between the two quarter sections running southerly from his established quarter corner, which line diverged slightly to the east from the course of the common boundary line as established by Munson. Judson, as did Munson, also had in his possession a certified copy of the field notes of the government survey of that section. His testimony as to the contents of those notes, admitted without objection, and his testimony, as we read it, touching the distance he located the quarter corner east of the creek, does not contradict the testimony of Munson. He does not differ with Munson other than as to the measurements determining the equidistant point between the section corners.

It is plain from the testimony that both Munson and Judson were fully warranted in proceeding upon the assumption that the original government survey location of the quarter section corner was lost, and that, in order to ascertain its proper location, it was necessary that it be established equidistant between the northeast and northwest corners of the section. It was not otherwise suggested to them by either of the parties to the action or by anyone else. It is plain from all the evidence introduced upon the trial that it must be held that the original government survey location of the quarter section corner was, at the time of the making of those two surveys, and has since remained, lost; unless it be otherwise proven by the testimony of John Springer and John Hurst given upon the trial of this action; which testimony we shall presently notice.

It is now conceded that the Judson survey establishing the quarter corner forty or fifty feet east of where it had previously been established by Munson is correct, so there remains the question of trespass by

Anderson east of and beyond the Judson line, if it is to be held that the true common boundary line is some three hundred feet farther east, as claimed by Anderson as a proved original location upon the ground in the making of the government survey. It appears from the evidence that there was trespass by Anderson beyond the Judson line, unless the testimony of Springer and Hurst proves that the quarter corner is not lost, but was in fact established by the government survey at a point some three hundred feet east of the corner as established by Judson.

Some twenty years ago, John Springer was the owner of the northeast quarter of the section now owned by Wilson, he having homesteaded that quarter section many years prior thereto. He then had occasion to determine the west line of that quarter section incident to the sale by him of the cedar timber thereon. He testified with reference to his then ascertaining the true location of his west boundary line in part as follows:

"Q. Did you ever have occasion to run the line and observe the corners? A. Yes, sir. Q. How long ago? A. About twenty years. Q. What was the occasion? A. I wanted to sell the cedar. Q. To whom? A. To the Quilcene Shingle Company. Q. I will ask you if you ever actually saw the quarter corner on the north? A. We started from the northeast corner and run west and we found the center of the section, and we found the witness tree, as we thought, and we found a stake, and then we ran south and when we come to the county road [about a quarter of a mile] we blazed a tree and the tree is still standing there. Q. But did you find on the north there the government stake? A. I couldn't say if it was the government stake, but there was a stake. Q. Was the corner indicated by a stake? A. It was a fir tree, a blazed tree, and it is still standing. Q. Did you find the corner? A. We found a stake there, but we didn't know whether it was the

government stake and one witness tree. Q. How far was the corner from the witness tree, do you remember? A. Well, I couldn't say as to that. Q. Who was with you? A. Mr. Hurst. Q. The stake you took to be the corner? A. Yes. Q. You called it the corner and ran from that. Was this line blazed? A. We made some blazes on it. The government didn't run a line through the center. Q. Can you go to the old post where you established it? A. Within a few feet of it.''

On cross-examination, he further testified:

''Q. This stake you say was not marked? A. The stake was not marked. Q. And the stake itself, what kind of a stake was that? A. It was about four inches across. Q. You simply assumed it to be a quarter corner post? A. Corner of the quarter, yes, sir. Q. And from that point you blazed a line south? A. Yes, sir. Q. Did you run that line by compass? A. No.''

John Hurst, who was with Springer on the occasion with reference to which Springer testified, as above noticed, testified in part as follows:

''Q. Do you remember locating a line out there between the northeast and the northwest corners of section 14 twenty years ago? A. I do. Q. You and Mr. Springer did that? A. Yes, sir. Q. Do you know the purpose you were locating the line for? A. Springer was selling the cedar stumpage to the shingle company and wanted a line to cut to. Q. And you went with him and located for that purpose that line? A. Yes, sir. Q. Did you find the quarter corner on the north line? A. We found a post there and some trees, but it has been so long ago, but it seems we took them for bearing trees. There had been a through transit line from the northeast corner by the Port Blakely Railway Company, they had run a transit line and set a quarter post and marked a corner, but as to the bearing trees I don't remember, but we took it as the quarter corner. Q. You were able to locate the old quarter corner? A. No, nothing definite. We located the place, but no markings were there. Q. So far as you know, it may or may not have been the proper

post? A. Certainly. Q. You didn't chain it there? A. No; we stepped it there.''

This, as we read the record before us, is, in substance, the whole of the evidence tending to show that the original quarter section corner was actually established upon the ground by the government survey at the point claimed by Anderson.

■ It seems to us that this evidence falls far short of proving the original establishing of that quarter corner as claimed by Anderson, particularly in view of the fact that that point is some three hundred feet east of where the quarter corner was established as indicated by the government field notes, and also some three hundred feet east of a point equidistant between the northeast and northwest corners of the section. Under these circumstances, it would require clear and convincing evidence to show the original establishment of the quarter corner upon the ground in the making of the government survey at a point so far removed from its theoretically correct position, and so far removed from where the government survey notes indicate it to have been located. *Cadeau v. Elliott*, 7 Wash. 205, 34 Pac. 916; *Reed v. Firestack*, 93 Wash. 148, 160 Pac. 292.

The testimony of Springer and Hurst is, at best, only opinion evidence based upon what they saw at the location they assumed to be the original location of the quarter corner. According to their own testimony, they saw nothing there marking the original location which was made or done in the making of the government survey. Their assumption that a witness tree was there is based only upon the fact that that tree was a blazed tree. This, it is well known, is not an uncommon occurrence at places along section lines as indicating the approximate location of the line, rather than any particular point upon the line. We are of

the opinion that the evidence fails to show that the location claimed by Anderson as the original government survey location of the quarter corner is the original government survey location of that corner; and we are further of the opinion that the evidence clearly shows that the north quarter section corner is a lost corner, and that its true location must be determined as was done by the Judson survey; it being conceded that that is a correct survey for that purpose.

It is apparent from what we have said thus far that the judgment of the trial court denying any recovery to Wilson and dismissing the action must be reversed in so far as his claim against Anderson is concerned, there being evidence supporting a finding that Anderson did, in some substantial measure, trespass upon and remove timber from Wilson's land along the northerly portion of the boundary between the two quarter sections; that is, that common boundary as established by the Judson line. The trial court found the correct location of the quarter corner to be as claimed by Anderson; that is, at the location with reference to which Springer and Hurst testified, and that Anderson did not remove any timber from east of a line running south therefrom, and hence did not trespass upon Wilson's land.

No finding was made by the trial court as to the amount or value of timber removed by Anderson from east of the Judson line. The evidence is plain that at least a considerable amount of timber was removed by Anderson from east of the Judson line, which the evidence shows to be the correct common boundary between the two quarter sections. The judgment of dismissal denying recovery to Wilson is reversed, and the cause is remanded to the trial court to make findings as to the value of the timber so removed by Ander-

son from Wilson's land, and award him judgment against Anderson accordingly.

Mitchell, C. J., Main, Tolman, and Holcomb, JJ., concur.