[No. 7580–1.   Division One.   December 17, 1979.]

SAN JUAN COUNTY, *Petitioner,* v. FREDERICK AYER II,
ET AL, *Appellants,* KRABBE & STARR,
INC., *Respondent.*

*E. H. Knapp, Jr., Prosecuting Attorney*, for petitioner.

*William V. Vetter*, for appellants.

*Schmidt & Linde* and *John O. Linde*, for respondent.

RINGOLD, J.—San Juan County brought a declaratory judgment action for resolution of an inconsistency between two short plats filed by two surveying concerns, San Juan Surveying, Inc. (SJS), and Krabbe & Starr, Inc. (K & S). The action was tried as an interpleader with present appellants (SJS) on one side and respondents (K & S) on the other. SJS appeals the trial court's judgment which represented a compromise between what each side had sought.

The basic issue presented for our consideration is the proper burden of proof to be applied in determining whether a survey corner has been "obliterated" and reestablished. The trial court determined that the standard to be imposed upon both parties was proof beyond a reasonable doubt. He concluded that neither side had sustained the burden and entered judgment accordingly. We hold that the trial court was correct and affirm.

In June 1976, SJS submitted applications for short plat approval, and on July 1, 1976, K & S on behalf of the owner of land adjoining that represented in the SJS application submitted a short plat application. The San Juan County Engineer, perceiving an inconsistency between the two supporting surveys, requested the surveyors to reconcile their differences. SJS and K & S being unable to reach an agreement, San Juan County brought this action for declaratory judgment on behalf of the county engineer.

The difference between the surveys hinges upon the location of a section corner whose exact location was established by the United States General Land Office (GLO) original survey of the area in 1874. Both sides contended

that the GLO corner was "obliterated," such term being a surveying term of art meaning

[a corner] at whose point there are no remaining traces of the monument or its accessories, but whose location has been perpetuated, or the *point* for which may be *recovered beyond reasonable doubt* by the acts and testimony of the interested landowners, competent surveyors, or other qualified local authorities, or witnesses, or by some acceptable record evidence.

(Italics ours.) Brief for Respondent at 27, *Instructions to the Surveyors General of Public Lands of the United States* § 5–9, at 130 (1973) (Manual). Both sides attempted to establish the location of the original corner as obliterated according to the GLO formula quoted above. In its survey, K & S used a monument set some 30 years ago by the United States Department of Natural Resources (DNR). It had been used by persons in the area and by other professional surveyors to mark the corner although no record was produced to tie it to any of the original monumentations. SJS, believing that DNR does not correctly monument a corner, attempted to establish the corner from physical evidence in the area. During the trial, devoted mainly to expert testimony for the two respective positions, one of the expert witnesses stated that the corner may be "lost." In surveying parlance, a "lost" corner is

a point of a survey whose position cannot be determined, beyond reasonable doubt, either from traces of the original marks or from acceptable evidence or testimony that bears upon the original position, and whose location can be restored only by reference to one or more interdependent [*i.e.,* nearby, adjacent] corners.

Manual § 5–20, at 133.

After trial, the court took the matter under advisement and requested more evidence concerning a 1915 survey and regarding the method for relocating a "lost" corner, the proportionate measurement method. According to the Manual a proportionate measurement is

one that gives equal relative weight to all parts of the line. The excess or deficiency between two existent corners is so distributed that the amount given to each interval bears the same proportion to the whole difference as the record length of the interval bears to the whole record distance.

Manual § 5–24, at 133.

Both parties rely upon the Manual and are in agreement that Washington courts and surveyors are required to follow the instructions of the Manual. *King v. Carmichael,* 45 Wash. 127, 87 P. 1120 (1906). SJS contends, however, that the court is not required to apply the "beyond a reasonable doubt" standard but that in a civil case such as this the burden of proof is the clear, cogent, and convincing standard. SJS further contends that even if the burden of proof is beyond a reasonable doubt, the trial court misapplied it here and that the evidence is insufficient to sustain the findings for a "lost" corner unless there was no possibility of locating the original corner on the ground.

## BURDEN OF PROOF

A review of the Washington cases dealing with this subject does not reveal clear analysis of the appropriate standard to be applied. The policy basis for the deference paid to a GLO survey was enunciated in *Greer v. Squire,* 9 Wash. 359, 364, 37 P. 545 (1894) where the court quoted *Cragin v. Powell,* 128 U.S. 691, 32 L. Ed. 566, 9 S. Ct. 203 (1888) as follows:

[T]he power to make and correct surveys of the public lands belongs to the political department of the government, and 'the reason of this rule,'" say the court, quoting . . . *Haydel v. Dufresne,* 17 How. 23 [30 (1854)], "is that great confusion and litigation would ensue if the judicial tribunals, state and federal, were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done and divisions more equitably made that the department of public lands could do."

*Greer v. Squire, supra* at 364. Thus, our court early declared that "the true corner is where the United States

surveyor established it, notwithstanding its location may not be such as is designated in the plat or field notes." *Greer v. Squire, supra* at 362. The court resolved *Greer* by according conclusive weight to the monumentation over the field notes. A year earlier the court had given great weight to field notes, where the actual location of the monumentation was unascertainable. There the court held:

> If any credit at all is to be given the plats and field notes, the presumption must attach that the corners have been established at the places indicated by such field notes; so that the burden is upon him who disputes their correctness. But where, . . . the establishment of the corner . . . does not accord with the field notes . . . the proof of such actual establishment must be clear and convincing.

*Cadeau v. Elliott,* 7 Wash. 205, 205–06, 34 P. 916 (1893).

The court first considered the dichotomy between a lost, as opposed to an obliterated, corner in *King v. Carmichael, supra,* and upheld the trial court's determination that the corner was lost without suggesting what the burden of proof must be; the court indicated that the case "presented a question of fact only" and that "we are not inclined to disturb the findings of the trial court." *King v. Carmichael, supra* at 128. The lost corner vis–a–vis obliterated corner issue appeared again in *Inmon v. Pearson,* 47 Wash. 402, 92 P. 279 (1907), and then again in *Hale v. Ball,* 70 Wash. 435, 126 P. 942 (1912), where the court summarized the applicable rules:

> We conceive that there is a distinction between a lost corner and a corner the markings of which have been obliterated. If no monument or marking of a quarter corner can be found, or the testimony of its location be overcome by better evidence, a court will decree the establishment of a corner under the rule prevailing in the land department of the United States; that is, at a point equidistant from the section corners. But it does not follow that, if there be evidence of a corner which has been destroyed or obliterated by the lapse of time, a court will direct the establishment of a corner under the rule

stated, or any other rule, for the law establishes an obliterated corner where the surveyor actually located it, and not where it ought to be located by a correct survey.

(Citations omitted.) *Hale v. Ball, supra* at 441. The court decided that the evidence preponderated in favor of the corner being obliterated.

In *Wilson v. Creech Bros. Contracting Co.,* 159 Wash. 120, 292 P. 109 (1930) it was agreed as between the parties that the corner was lost; giving due deference to the point established by field notes as the best extant evidence of the original location, the court said:

[I]t would require clear and convincing evidence to show the original establishment of the quarter corner upon the ground in the making of the government survey at a point so far removed from its theoretically correct position, and so far removed from where the government survey notes indicate it to have been located.

*Wilson v. Creech Bros. Contracting Co., supra* at 127.

In *Lappenbusch v. Florkow,* 175 Wash. 23, 26 P.2d 388 (1933) the court held without characterizing the standard that the respondent had failed to meet the burden of proof to establish that the government corner was lost.

■ From these cases we conclude that the Manual must be relied upon for resolving this issue. Do we thus determine that the standard of proof to establish an obliterated corner must be beyond a reasonable doubt, as required by the current Manual, or clear, cogent, and convincing proof as suggested by *Wilson?*

The rationale for requiring proof "beyond a reasonable doubt" has been well stated in *Greer v. Squire, supra.* There are strong policy considerations favoring the retention of a corner once marked on the ground by the government surveyor even though that is a point which other surveyors might upon resurveys agree is in error. The directive of the Manual reflects experiences accumulated over the years by those who surveyed the continental United States and anticipated the problems of ascertaining obliterated corners. Their considered judgment that the

establishment of an "obliterated corner" should require the highest degree of proof reflects an acknowledgement that error was bound to be made by surveyors subject to human frailties. Thus the GLO prefers the reestablishment of a lost corner by the proportionate method rather than reliance upon evidence of its original location that is open to doubt. To lend certainty to an area that might otherwise lead to "great confusion and litigation," *Greer v. Squire, supra,* the Manual requires proof beyond a reasonable doubt of the original location of the point.[1]

---

[1]Counsel for K & S suggests that "beyond a reasonable doubt" test is nothing more than the clear, cogent, and convincing test in a civil action, and that the trial court in effect applied the clear, cogent, and convincing evidence standard of proof. While there is case authority for that proposition upon which we could sustain the trial court, we decline to do so.

The Supreme Court in considering proof necessary for commitment of a mentally ill person equated the "clear, cogent, and convincing" test with the "beyond a reasonable doubt" standard. In *In re Levias,* 83 Wn.2d 253, 256, 517 P.2d 588 (1973) the court said:

> In this regard, the ruling of the trial court below is consistent with the Supreme Court holding in *Winship* [397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970)] in demanding that the state establish its case under a standard of proof which constitutes the civil counterpart of the criminal reasonable doubt standard, to wit: clear, cogent, and convincing evidence. Carrying a much greater and stricter burden of proof than a mere preponderance of the evidence (*Cheesman v. Sathre,* 45 Wn.2d 193, 197, 273 P.2d 500 (1954)), the clear, cogent, and convincing test applicable in mental illness proceedings . . . [is necessary for commitment in criminal proceedings]

*Levias,* however, must be compared with *Bland v. Mentor,* 63 Wn.2d 150, 385 P.2d 727 (1963) in which the court considered the clear, cogent, and convincing test as applied to a claim of fraud. The *Bland* court said:

> We have said that the phrase "clear, cogent, and convincing" evidence denotes a quantum or degree of proof greater than a mere preponderance of the evidence . . . We do not deem the term connotes proof beyond a reasonable doubt.

*Bland* at 154. We can reconcile the distinction between the two cases on the basis that in *Levias* proof of the ultimate fact results in the commitment of the individual. Again, in *State v. Rhodes,* 92 Wn.2d 755, 600 P.2d 1264 (1979), the Supreme Court in an action under the juvenile code, RCW 13.40.230, considered whether there was evidence which was "clear and convincing" to support a disposition outside the standard range, and equated the standard with the "beyond a reasonable doubt" test. We do not believe, however, that that Supreme Court intended to reverse the holding in *Bland v. Mentor, supra,* and equate the "clear, cogent and convincing" burden of proof with the "beyond a reasonable doubt" standard in all civil cases. *See* WPI 160.02, 160.03.

We hold that a party seeking to recover the location of an obliterated surveying point must sustain the burden of proving the location of that point beyond a reasonable doubt.

## STANDARD OF APPELLATE REVIEW

Both sides argue that this court should uphold the trial court unless the evidence preponderates against the trial court's findings. *Lappenbusch v. Florkow, supra* at 25. The argument of both sides, in their briefs and orally, was predominately factual and the dispute is factual. Confronted on numerous occasions with issues on appeal similarly factual, the appellate courts in this state have become less willing to retry the factual issues because such retrial inevitably usurps the function of the trier of the fact to evaluate the credibility and the weight of the evidence. There is no question that our courts have held that where the burden of proof is by a preponderance of the evidence the substantial evidence rule will be applied and the appellate court will simply seek to determine whether the trial court's findings are supported by substantial evidence. If so, they will not be disturbed on appeal. *Jarrard v. Seifert,* 22 Wn. App. 476, 591 P.2d 809 (1979).

There is some uncertainty when we are dealing with the higher trial level burden of proof. In *In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973), the Supreme Court adopted a "highly probable" standard of appellate review where the trial level burden of proof was clear, cogent, and convincing evidence. Preferring the substantial evidence standard, this court declines to follow that test. In *In re Kier,* 21 Wn. App. 836, 839–40 n.1, 587 P.2d 592 (1978) we said:

> The court in *In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973) held that "[T]he question to be resolved is not merely whether there is 'substantial evidence' to support the trial court's ultimate determination of the factual issue but whether there is 'substantial evidence' to support such findings in light of the 'highly probable' test." *Sego* at 739. We interpret this language as an effort by the Supreme Court to fashion a different standard of

appellate review for trials in which the burden of proof was the preponderance of the evidence from that for trials in which the burden of proof was clear, cogent, and convincing evidence. The two cases relied upon by the *Sego* court in fashioning its "highly probable test" purport to describe only the trial level burden of proof, not the standard of appellate review. *Supové v. Densmoor,* 225 Ore. 365, 358 P.2d 510 (1971). The following analogy illustrates the import of those cases: Preponderance of the evidence is to more probably true than not true as clear, cogent, and convincing evidence is to highly probably true. The "high probability" criterion, then, serves only as a measure of the probable *truth* of the evidence.

The *Sego* court goes on to say, however, that an appellate court may not evaluate credibility or weight of evidence. *Sego,* at 737–40. Because we cannot envision any means of applying the *Sego* "high probability test" without inexorably passing upon the quality of the evidence, we have chosen to follow the traditional substantial evidence quantitative rule as clearly supported by the rationale of the opinion.

Despite the seemingly higher standard adopted by the court in *Sego* for appellate review of clear, cogent and convincing evidence, the standard for review of beyond a reasonable doubt evidence remains the "substantial evidence test." *State v. Green,* 91 Wn.2d 431, 588 P.2d 1370 (1979), *reconsideration granted* (April 24, 1979).

■ Since the standard for appellate review of the sufficiency of the evidence is the substantial evidence test in criminal cases we cannot discern any logical basis to adopt any other standard which would require an appellate court to measure the quality as well as the quantum of proof. Conceptually we do not see how an appellate court can apply any standard evaluating the quality of the evidence on a review of a record. It is therefore our conclusion that whether we are dealing with the preponderance of the evidence, the clear, cogent, and convincing evidence, or the beyond a reasonable doubt test, the appropriate standard of appellate review is the substantial evidence test.

While the trial court's findings are stated in the negative,

*viz.*, that neither side proved beyond a reasonable doubt the "obliterated corner" we view that finding as necessitating the inference that the corner is lost. Substantial evidence was presented to sustain the trial court's findings that this section corner was lost and the trial court properly established the corner as required by the Manual § 5–20, at 133.

## ADDITIONAL CLAIMED ERRORS

SJS next contends that by calling for additional evidence after the trial, the court committed reversible error. SJS offers no legal theory on the basis of which the trial court's request for additional evidence could be considered erroneous. No authority is cited for this contention and appellate courts will not consider an argument not supported by authority. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 593 P.2d 156 (1979).

The final contention made by SJS is that the trial court ruled inadmissible as hearsay statements by a surveyor made to him by an owner of land contiguous to the subject corner. The court did not err in excluding this hearsay testimony. *Inmon v. Pearson, supra* at 404.

The witness was testifying that he had made a partial survey of the area in 1960, and he had been unable to locate the subject corner. When asked why he could not locate the corner, he replied: "I just didn't see any evidence that I would trust and I talked to the adjacent landowner who had recently had a property survey made and he told me that . . . [objection]." The exclusion of this testimony would be prejudicial only if it tended to prove the existence of the corner. Instead, it would have been part of an answer to an inquiry as to why the witness could *not* locate the corner. Given the tenor of the question and the beginning of his answer, the adjacent landowner's statement could hardly have been corroborative of the location of the corner. The error was harmless. *State v. Jelle,* 21 Wn. App. 872, 587 P.2d 595 (1978); *cf. Thornton v. Annest,* 19 Wn. App. 174, 574 P.2d 1199 (1978).

The judgment of the trial court is affirmed.

CALLOW, C.J., and WILLIAMS, J., concur.

Reconsideration denied January 22, 1980.