776 P.2d 438

STATE of Idaho, ex rel.; John V. EV-
ANS, Governor; Pete Cenarrusa, Secre-
tary of State; Jim Jones, Attorney Gen--
eral; Joe R. Williams, State Auditor;
and Jerry L. Evans, Superintendent of
Public Instruction, as the State Board
of Land Commissioners, and Stanley F.
Hamilton, Director, Department of
Lands, Plaintiffs–Appellants,

v.

Albert E. BARNETT and Virginia L.
Barnett, husband and wife,
Defendants–Respondents.

No. 17710.

Supreme Court of Idaho.

June 21, 1989.

Jim Jones, Atty. Gen., and Clive Strong,
Deputy Atty. Gen., Boise, and Steven J.
Schuster, Deputy Atty. Gen. for Dept. of
Lands, Boise, for plaintiffs-appellants. Ste-
ven J. Schuster argued.

Robert E. Kinney, Orofino, for defen-
dants-respondents.

BISTLINE, Justice.

The State of Idaho brought this civil
action alleging that Albert and Virginia
Barnett were trespassing upon State land
near the village of Weippe, in Clearwater
County. The dispute turns on the location
of a section line forming the legal bound-
ary between land owned by the State and
the Barnetts' property. The Barnetts
counterclaimed asking the court to hold the
section line followed the line of an old
fence.

The Barnetts purchased their property in
1966. The fence existed at the time of

their purchase. Testimony and documentary evidence established that the fence was very likely fifty years old approximately. After moving onto the property the Barnetts began making improvements. On the strip of land which later became the subject of this dispute, they constructed a driveway, drilled a well, and erected outbuildings.

Sometime prior to April 1977, the State apparently entertained doubt that the fence was not precisely located on the section line, but instead was somewhat north of the section boundary. The Barnetts, together with other property owners in the area, had assumed that the fence represented their northern property line. No person had knowledge as to when it was built. The State filed suit alleging that the true boundary line was not the fence. Relief sought was that Barnetts be enjoined to remove their improvements situated on a portion of state-claimed property, bearing the dimensions of 35 feet in width and 371 feet in length.

In November 1977, the State hired Charles Cuddy, a registered land surveyor to conduct a survey of the boundary line separating the state land from the Barnetts'. Mr. Cuddy concluded that he could not definitively locate the northeast corner of the section of land owned by the State. Mr. Cuddy determined that the corner was "lost," as opposed to "obliterated." [1] As a result he fixed the corner using the method referred to as proportionate measurement. This method placed the boundary 35 feet south onto the Barnetts property.

The State then paid for another surveyor chosen by the landowners to review Mr. Cuddy's survey. That surveyor, James E. Burcham, reviewed Mr. Cuddy's work to insure the accuracy of the revised boundary line. Mr. Burcham could find nothing wrong with Cuddy's methods but disagreed with the placement of the northeast corner of the section. He felt that there was sufficient collateral evidence of the original location of the corner to characterize it as "obliterated." Mr. Burcham relied upon evidence left by Potlatch Corporation timber cruisers, the fence itself, and documents from the United States Geological Survey.

Judge Maynard, after hearing all the evidence concluded that though the evidence was conflicting, the State had not met its burden of proving by a preponderance that the fence line separating these properties was not the true boundary line. He accorded greater weight to the analysis of Mr. Burcham holding that sufficient indicia of the corner established that the corner was "obliterated" and not "lost." Therefore, he rejected the State's redrawn boundary line based upon proportionate measurement.

The Court of Appeals reversed the district court. *State ex rel. Evans v. Barnett*, 114 Idaho 355, 757 P.2d 218 (1988). The Court of Appeals held that a party seeking to establish that a property corner is "obliterated" must come forward with evidence showing that although there are no remaining traces of the original corner monument, the point may be recovered beyond a reasonable doubt by other acceptable evidence. Our review centers upon the Court of Appeals holding that a party seeking to recover the location of an "obliterated" corner must sustain the burden of proving the location of that point beyond a reasonable doubt.

 Since the issue is legal, rather than factual, we exercise free review. Additionally, since this case comes to us on a petition for review from our intermediate appellate court, we review directly the opinion of the district court. While we accord the views of our Court of Appeals serious consideration, we are not bound by those views. Thus our standard of review in this case is the following: assuming that the trial court applied the correct burden of proof, the standard of review is whether the trial court's findings are supported by

---

1. "Lost" and "obliterated" corners are terms of art familiar to surveyors. Definitions are provided *infra* at 431, 776 P.2d at 440. If the corner was "lost" then Mr. Cuddy correctly restored the corner by the proportionate method and the state's claim prevails. However, if the corner was "obliterated" the corner lies in the fence line as contended by the Barnetts.

substantial and competent evidence. *Kreiensieck v. Cook,* 108 Idaho 657, 660, 701 P.2d 277, 280 (Ct.App.1985).

■ The district court addressed the burden of proof issue as follows:

The State of Idaho, in order to prevail upon its claim now before the Court, must prove by a preponderance of evidence that the northeast corner ... was lost and not obliterated.

R., p. 80. The Court of Appeals took issue with this statement and offered the following analysis:

[T]he State has the initial burden of coming forward with evidence showing the original survey point cannot be determined and its location can now be restored by reference to adjacent corners. If this burden is met, the Barnetts, in order to sustain their contention that the corner is obliterated, must come forward with evidence showing although there are no remaining traces of the original monument, either the location has been perpetuated or the point may be recovered beyond reasonable doubt by other acceptable evidence. The State has the overall burden of persuasion, requiring it to demonstrate the weight of the evidence preponderates in its favor.

114 Idaho 355, 358–359, 757 P.2d 218, 221–222.

The Court of Appeals derived its "beyond a reasonable doubt" language cited above from a Bureau of Land Management, U.S. Department of Interior, publication entitled *Manual of Instructions for the Survey of the Public Lands of the United States* (1973). The parties are in agreement that this publication together with a BLM circular entitled "Restoration of Lost or Obliterated Corners and Subdivisions of Sections, A Guide for Surveyors" (1974), are the applicable guides for a legally valid survey in Idaho. In order to be admissible in court, a survey must conform to the BLM manual. Idaho Code § 31–2709 provides:

**Surveys must conform to United States Manual.**—No surveys or resurveys hereafter made shall be considered legal evidence in any court within the state, except such surveys as are made in accordance with the United States manual of surveying instructions, the circular on restoration of lost or obliterated corners and subdivisions of sections, issued by the general land office, or by the authority of the United States, the state of Idaho, or by mutual consent of the parties.

The relevant sections of the BLM manual are as follows:

5–9. An obliterated corner is one at whose point there are no remaining traces of the monument or its accessories, but whose location has been perpetuated, *or the point for which may be recovered beyond reasonable doubt* by the acts and testimony of the interested landowners, competent surveyors, or other qualified local authorities, or witnesses, or by some acceptable record evidence.

A position that depends upon the use of collateral evidence can be accepted only as duly supported, generally through proper relation to known corners, and agreement with the field notes regarding distances to natural objects, stream crossings, line trees, and off-line tree blazes, etc., or unquestionable testimony.

. . . .

5–20. A lost corner is a point of a survey whose position cannot be determined, *beyond a reasonable doubt,* either from traces of the original marks or from acceptable evidence or testimony that bears upon the original position, and whose location can be restored only by reference to one or more interdependent corners.

5–21. The rules for the restoration of lost corners should not be applied until all original and collateral evidence has been developed. When these means have been exhausted, the surveyor will turn to proportionate measurement, which harmonizes surveying practice with legal and equitable considerations. This plan of relocating a lost corner is always employed unless outweighed by conclusive evidence of the original survey.

Cited in *State ex rel Evans v. Barnett*, 114 Idaho at 357, 757 P.2d at 220 (emphasis added).

At the urging of the State, the Court of Appeals zeroed in on the "beyond reasonable doubt" language underscored in § 5–9 of the manual quoted above. However, the manual has never been adopted as a rule of civil procedure in the courts of this state. Nothing in the record demonstrates that it was intended to serve as anything but a rule for the guidance of surveyors in the field in their analyzing evidence found at the scene. The only reference in our statutes to the manual is contained in Idaho Code § 31–2709 quoted above. As stated therein, the only relationship between the courts of this state and the manual is that surveys or resurveys should conform with the manual and with the other BLM publications mentioned in the statute in order to be admissible as legal evidence of a survey or resurvey in any court within this state. No mention whatsoever is made in the statute regarding the respective burdens of proof for the respective parties to a survey dispute.

We agree with the Barnetts that to affirm the Court of Appeals opinion in this case would create an untenable situation for private landowners whose property lines abut state lands. If affirmed, the Court of Appeals opinion would allow the State to resurvey a line, introduce evidence of a survey which states the corner is a "lost" corner not an "obliterated" corner, and then the private landowner would be saddled with the highest standard of proof that exists in civil or criminal law of proving that the corner is obliterated beyond a reasonable doubt. The effect of such an affirmance would be to change the long standing allocation of the respective burdens of proof in a civil trespass action. This we are not persuaded to do.

■ The BLM manual and the BLM circular entitled "Restoration of Lost or Obliterated Corners and Subdivisions of Sections, A Guide for Surveyors" (1974) are

not statutes—even though the Court of Appeals appears to have treated them as statutes. Nevertheless, another reasonable reading of § 5–9 of the BLM manual regarding the definition of an obliterated corner is that the "beyond a reasonable doubt" language references the acts and statements of interested landowners, competent surveyors or other qualified local authorities. That is, if there is no physical evidence remaining of the corner itself nor any collateral evidence such as fences, blazed bearing trees, etc., *the corner may be established as obliterated based upon personal statements alone only if they are acceptable beyond a reasonable doubt.* In the first place it is for the surveyor on the scene to evaluate the testimonials of available witnesses in relation to that of other witnesses, plus any other information or circumstance which may be properly considered. This reading is bolstered by reference to the second paragraph of § 5–9 wherein mention is made of "unquestionable testimony." This language is repeated in commentary contained in the BLM circular referenced above which explains the definition of an obliterated corner. The circular states:

> A position that depends upon the use of collateral evidence can be accepted only as duly supported, generally through proper relation to known corners, and agreement with the field notes regarding distances to natural objects, stream crossings, line trees, and off-line tree blazes, etc., *or unquestionable testimony.*[2]

(Emphasis added.)

■ That the Court of Appeals was treating the BLM manual as if it were a statute is evidenced by another comment contained in that court's *Barnett* opinion:

> [W]e note that before some point can be accepted as the location of a corner once set and since obliterated, either the location must have been "perpetuated," or there must be some acceptable evidence establishing beyond reasonable doubt

---

**2.** "Testimony" is not here used in the technical sense, familiar to lawyers, of statements made under oath. It is more in the way of statements

made by persons with personal knowledge of the position of an obliterated corner monument.

that the chosen spot is in fact the site of the original corner. BLM manual, § 5–9. It is clear that here the corner has not been "perpetuated." The process of perpetuating a corner is prescribed by statutes, designated as the Corner Perpetuation, and Filing Act, Idaho Code §§ 55–1601 to 55–1612.

*State ex rel Evans v. Barnett,* 114 Idaho at 357, 757 P.2d at 220. There is, however, no reason to believe that a national publication such as the BLM manual was intended to be read *in pari materia* with the applicable Idaho statutes. Yet this is exactly what the Court of Appeals did in its opinion below. Therein, in support of its position was cited *San Juan County v. Ayer,* 24 Wash.App. 852, 604 P.2d 1304 (1979). The following portions of *San Juan County* were quoted and relied upon by the Court of Appeals in its opinion below:

> The directive of the Manual reflects experiences accumulated over the years by those who surveyed the continental United States and anticipated the problems of ascertaining obliterated corners. Their considered judgment that the establishment of an 'obliterated corner' should require the highest degree of proof reflects an acknowledgement that error was bound to be made by surveyors subject to human frailties. Thus the GLO [General Land Office] prefers the reestablishment of a lost corner by the proportionate method rather than reliance upon evidence of its original location that is open to doubt. To lend certainty to an area that might otherwise lead to 'great confusion and litigation,' *Greer v. Squire,* [9 Wash. 359, 37 P. 545 (1894)], the Manual requires proof beyond a reasonable doubt of the original location of the point. [Footnote omitted].

> We hold that a party seeking to recover the location of an obliterated surveying point must sustain the burden of proving the location of that point beyond a reasonable doubt.

604 P.2d at 1307–08. Quoted in *State ex rel Evans v. Barnett,* 114 Idaho 355, 358, 757 P.2d 218, 221.

With due respect to our Court of Appeals and to the Washington Court of Appeals Division One, *San Juan County* is not compelling nor even persuasive authority. First, the *Greer* case cited in support is not on point. While *Greer* is far from a model of clear writing, to the extent that the facts in *Greer* can be ascertained it appears that case dealt with a situation where corner monuments existed but that one of the parties had the area resurveyed and following such resurveying then claimed that the post established by the government land office was incorrectly placed. The court went on to explain that government land surveying posts must be accorded absolute deference even if later calculations show them to be improperly placed. The reference to "great confusion and litigation" attributed to *Greer* in context merely says the following:

> [T]he power to make and correct surveys of the public lands belongs to the political department of the government; 'and the reason of this rule [citation omitted] is that great confusion and litigation would ensue if the judicial tribunals, state and federal, were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done, and divisions more equitably made, than the department of public lands could do.'

*Greer, supra,* 37 P. at 547. The court simply held that existing posts conclusively establish the corners of land parcels even if later surveys showed that the posts were placed inaccurately. Such a holding has nothing to do with the case before this Court.

In addition, the statement in *San Juan County* that the GLO prefers the re-establishment of a lost corner by the proportionate method is in error. The BLM circular, "Restoration of Lost of Obliterated Corners and Subdivision of Sections" in the commentary following the definition of a lost corner states the following:

> If there is some acceptable evidence of the original location of the corner, that position will be employed.

**434**

[The] [d]ecision that a corner is lost should not be made until every means has been exercised that might aid in identifying its true original position.

We also believe the Court of Appeals misreads our earlier cases. Referencing *Pointner v. Johnson,* 107 Idaho 1014, 695 P.2d 399 (1985), *Case v. Ericson,* 44 Idaho 686, 258 P. 536 (1927), and *Craven v. Lesh,* 22 Idaho 463, 126 P. 774 (1912), the Court of Appeals stated that its interpretation and application of the BLM manual was consistent with these earlier cases. However none of these cases says anything about requiring an obliterated corner to be proved beyond a reasonable doubt. Instead they stand for the mundane proposition that the findings of fact by a trial judge regarding obliterated and lost corners will not be set aside unless clearly erroneous. In *Pointner* and *Craven* the appellate court found the trial court's ruling supported by substantial competent evidence and affirmed. In *Case* the court determined that no competent evidence supported the trial court's finding and reversed.

Thus the underpinnings of the Court of Appeals' opinion below in this case do not support the Court of Appeals' result. Accordingly the Court of Appeals' opinion in *State ex rel Evans v. Barnett* cannot stand and is specifically set aside.

■ On the question of whether substantial competent evidence supported the district court's decision, we hold that it did. The conflicting evidence submitted by both sides is thoroughly examined by the Court of Appeals' opinion below. *See,* 114 Idaho 355, 359–61, 757 P.2d 218, 222–24. The bench trial was clearly a battle between the expert witnesses, Mr. Cuddy for the State, and Mr. Burcham for the Barnetts. The trier of fact was persuaded by Mr. Burcham's presentation. There was substantial documentary and opinion evidence supporting Mr. Burcham.

The State asserts error in the admission of certain notes prepared by a U.S.G.S. mapping team. However, we need not address this issue. Even if the evidence was admitted erroneously, an issue upon which we express no opinion, there certainly was other abundant substantial and competent evidence upon which a reasonable trier of fact could have relied in ruling that the evidence preponderated in favor of the Barnetts. That being so, the judgment of the district court is reinstated. Costs to Barnetts; no attorney fees on appeal.

BAKES, C.J., HUNTLEY and JOHNSON, JJ., and McFADDEN, J. Pro Tem., concur.